JOSEPHINE SPAUNHORST, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals. Opinion Filed March 7, 1922.

1. RAILROADS: Suburban Electric: Work Car: Automobiles: Collision: Obstructed View: Contributory Negligence: Recovery Barred. Plaintiff, familiar with the location of a dangerous highway crossing over the tracks of an electric railway company, and knew of the location and proximity of obstructions near the track, yet drove along at 10 miles an hour until she came into the open view of the track 17 feet from the rail, or within 15 feet of the danger zone, without having the automobile put in such gear or under such control with reference to speed that same could have been stopped before reaching the rail, where the machine was struck by a projection on the side of a work car, *held* plaintiff was guilty of such contributory negligence, as a matter of law, as to preclude her right to recover on any of her charges as for primary negligence.

2. ———: ———: ———: ———: ———: Negligence: Humanitarian Doctrine: Evidence: Sufficiency. In an action for damages for personal injuries against a suburban electric railway company caused by a work car of defendant striking an automobile which plaintiff was driving at a country highway crossing, evidence as to the speed of the car at the time the motorman began applying the brakes or putting on the reverse lever, and the distance in

(319)

which the car could have been stopped and the collision avoided, re.
viewed and *held* under such state of facts the court properly sub-
mitted the case to the jury under the humanitarian or last clear
chance doctrine.

3. **NEGLIGENCE:** Work Car Striking Automobile: Humanitarian
Doctrine: Case for the Jury. In an action for damages for personal
injuries against a suburban electric railway company caused by
a work car striking an automobile, plaintiff's evidence *held* to
establish the fact that the automobile had stopped and that de-
fendant's car struck the automobile causing the injury.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. George H. Shields*, Judge.

REVERSED AND REMANDED.

*T. E. Francis, Charles W. Bates* and *Albert D.
Norton* for appellant.

*Albert E. Hausman* for respondent.

DAUES, J.—This is an action for damages alleged
to have accrued to plaintiff because of personal injuries
received on account of defendant's negligent operation
of one of its cars. Plaintiff recovered a verdict and judg-
ment in the circuit court for $4000. Defendant prosecutes
this appeal.

The charges of negligence specified in the petition
may be classified thus: (1) Negligent failure to sound
a warning; (2) negligent running of the car at excessive
speed; (3) failure to keep a vigilant watch, and (4)
the petition counts on the humanitarian doctrine.

The answer is a general denial and charges of con-
tributory negligence. The reply is a general denial.

On May 16, 1916, plaintiff was injured in a collision
between an automobile driven by her and one of defend-
ant's freight cars on Manchester Road in St. Louis
County at a point where the Kirkwood-Ferguson line of
the defendant intersects said road several miles from
the City of St. Louis. The defendant's car was what is

known as a rock or work car; it was about thirty feet in length and constructed like an ordinary railroad box car and propelled by means of an electric motor in charge of the motorman on the forward end, the power being obtained from the trolley above. The car was twelve feet high and equipped with ordinary hand brakes only. Plaintiff, at the time of the accident, was driving a five-passenger Ford automobile, sitting on the left-hand side in the front seat at the steering wheel. With her on the seat was her mother, her father sitting in the rear seat. The accident occurred in the early afternoon, the day was bright and the road dry.

At the point in question, Manchester Road runs east and west, and the defendant's car tracks cross the road at right angles, running almost due north and south. The work car was fully loaded with rock, which was being hauled from a quarry owned by defendant located on a switch about a quarter of a mile south of Manchester Road. The track from the quarry south of Manchester Road northward and across Manchester Road is straight and laid on an embankment which is about eight feet above the level of an open field immediately adjacent and south of Manchester Road. Extending southwardly from a point approximately twenty feet south of Manchester Road, and fifteen feet east of the car tracks, there was a row of sixteen trees extending about 250 feet, and the trees at the time were in full foliage. The ground at that point being six or eight feet lower than the rails of the tracks, the foliage of the trees extended over the tracks for a distance of about twenty feet over the level of the rails. There were two sign boards in the field east of the tracks and south of Manchester Road, the sign being built in what is known as "V-shaped," the point of the "V" being toward Manchester Road and the open wings being to the south. The point of the sign board was six feet south of the south line of Manchester Road and the west wing of the sign board extended to a point about twenty-six feet east of the tracks. The other end of the sign board was about 175 feet east of the tracks.

209 M. A.—21

According to plaintiff's testimony, she was entirely familiar with the situation of the crossing; she had been over this point a great many times driving an automobile, and she was familiar with the obstruction of the view at this point. On this occasion the automobile was open on the sides. Plaintiff was sitting on the side from which the work car approached. She testified that at the time of the accident she was driving about three feet north of the center line of the roadway; that the traveled portion of the roadway is thirty-three feet wide. It appears from other testimony that the road itself is sixty feet wide at this point. Plaintiff says that the foliage of the trees cut off her view. up the track to a point beyond twenty feet south of Manchester road; that in approaching the tracks she had . slowed down her automobile from twelve to ten miles an hour; that she neither saw nor heard the car, though she looked and listened therefor; and when at a point seventeen feet east of the tracks she for the first time was able to see, and did see the rock car coming north which was then at a point about twenty feet north of the south line of Manchester Road; that she at once put her foot on the brake and pulled up the hand brake; that the automobile continued on, however, until it almost reached the tracks, she having turned the wheels slightly to the north at the track, and that as her machine stopped she attempted to reverse the mechanism to back it, and while engaged in this attempt the main portion of the rock car passed clear of the wheels, but a projection on the right side near the front struck the left front wheel of the automobile, breaking it and damaging the radiator, causing plaintiff to be thrown against the steering wheel, from which she suffered a fractured jaw.

In plaintiff's judgment, the rock car when she first saw it, was moving at a rate of twenty to twenty-two miles an hour. She seemed positive in her statement that she could stop her automobile when going at a

speed of ten miles an hour in ten feet. At this place in the road there is a slight upgrade towards the west. The roadway was dry, the mechanism and the brakes of her automobile were in perfect working condition, and she says she applied the brakes immediately upon seeing the rock car when she was seventeen feet from the tracks, (taking the evidence most favorable to her), which was as soon as her vision became unobstructed.

The testimony of Mrs. Sarah Spaunhorst, plaintiff's mother, did not vary substantially from that given by plaintiff herself.

The defendant's motorman, Mahoney, testified on behalf of plaintiff that he was in charge of the rock car on this occasion; that he was operating the car at from ten to twelve miles an hour; that he was on the front platform proceeding northwardly, and that when he arrived at a point about twenty feet south of the south of the south line of Manchester Road he saw the plaintiff's automobile about thirty feet east of the track; that the automobile was north of the center line of the road, just about the the center line going west. On cross-examination, this witness stated that at an hundred and fifty to two hundred feet from the crossing he began to ring the bell on the car, and continuously rang same as he crossed Manchester Road; that when he first saw plaintiff, that is, when the car was twenty feet from Manchester Road, that "it looked to me like she stopped the machine . . . I rode up to the crossing slowly about ten miles an hour and when I seen the lady stop, I went to cross and then turned around to look and it looked like she used the wrong lever in my judgment. The machine ran right into the side of my car." This witness was unable to fix the distance with exactness, and said that plaintiff's automobile might have been forty feet from the track when he first saw it, and that the automobile was "fifteen or twenty feet—twenty-five feet back from the track, I suppose," plaintiff increased the speed

of her automobile; it seemed to witness that plaintiff used the wrong lever of the automobile; that he applied the hand brake on the car as soon as he discovered that the automobile had not stopped but had increased its speed; that the street car had reached some point in Manchester Road before he was able to stop his car. The point of collision on the car was near the front where there were steps projecting. Witness said that he operated his car at the rate of ten miles an hour until about the center of Manchester Road, when he began to stop same, and that when the car stopped, the rear end of same was about ten feet on Manchester Road.

Wm. P. Smith gave expert testimony on behalf of plaintiff that a reasonably skillful motorman could have stopped a car of the type such as is in controversy here and under similar circumstances when running at a speed of twelve miles an hour, in about thirty-three feet, and could have stopped it in thirty feet if the speed were ten miles an hour.

This, we think, is a fair and sufficient recital of the facts for the purposes of this opinion.

The case was submitted to the jury on all of the assignments of negligence contained in the petition. Defendant's main insistence is that the court erred in failing to give, at the close of the whole case, an instruction in the nature of a demurrer to the evidence. It is argued that the evidence is clear that plaintiff was guilty of such contributory negligence as to preclude her right to recover on any of her charges, as for primary negligence. It is insisted that plaintiff admittedly approached the known danger of the railroad crossing, where the view of approaching cars was known by her to be obstructed, at such a rate of speed as to be unable to stop her conveyance before reaching the tracks and avert a collision with the rock car. We address ourselves to this inquiry.

From the evidence most favorable to plaintiff, it appears that she saw the work car come from behind the obstruction twenty feet south of the south line of Manchester Road. This was immediately after she had passed the sign board and had cleared the view of the trees and at a point when she was seventeen feet east of the east rail of the north-bound track. She said that she had driven an automobile for about three years almost daily; that she had driven this particular machine for some time, and that she was quite sure she could stop the car on a dry level road within ten feet when going at the rate of ten miles an hour; that she aplied all the appliances necessary to stop her car as soon as she discovered defendant's work car, but that her automobile, in fact, ran up to the rail. She made definite measurements of the location and seemed to be reasonably clear that the distance from the rail to the point where she first saw the car was seventeen feet. Obviously, therefore if correct about the distance, and that she could stop her car in ten feet in going ten miles an hour, the automobile was either going faster than ten miles an hour at the time, or she did not apply the brakes until after the automobile had passed the point of open view about seven feet. But, be that as it may, she admittedly was driving at the rate of ten miles an hour at this dangerous crossing with which she was entirely familiar. The automobile admittedly was creating some noise to interfere with a clear hearing. She was running the automobile in high speed (gear), and being perfectly familiar with the distance to the rail before her, she nevertheless ran the machine in high gear at ten miles an hour to this point where the open vision first presented itself, and this was only seventeen feet from the rail, when, as the facts proved, it was impossible to avoid running up to the rail.

A determination of the question as to whether or not the evidence in the whole case convicts the plaintiff

of negligence as a matter of law, we confess is attended with some difficulty. There are many decisions in this State involving accidents at railroad crossings, where the view from the highway is obscured by obstructions. Each case must necessarily stand on the state of facts therein presented. The language employed in deciding those cases cannot be placed side by side for comparison unless the facts are likewise comparable. No two state of facts are necessarily alike, and hence the language of these cases in a general discussion as to what constitutes the duty of the traveler in approaching a railroad crossing cannot always be readily reconciled.

We have set out the evidence, of course, most strongly in favor of the plaintiff, as we must do on this appeal, and we cannot escape the conviction that plaintiff was guilty of such contributory negligence as a matter of law to preclude her right to recover on any of the charges as for primary negligence. Being perfectly familiar with the location of this dangerous crossing, she was not surprised by finding obstructions near the track, she knew of their location and proximity to the tracks; she drove along in high gear ten miles an hour until she came into the open view of the track seventeen feet from the rail, or within fifteen feet of the danger zone, the construction of the street car projecting over the rail about two feet. No reasonably prudent person, we hold, would, in view of all the facts and circumstances attendant, have darted from behind this sign board unless the automobile was put in such gear, or under such control with reference to speed, that same could have been stopped before reaching the rail, and to have done otherwise would have been a disregard of his own safety.

It must be borne in mind that this is not a case where the traveler stops, looks and listens and sees no aproaching train, or a case where the traveler has the automobile under such control as to stop before reaching

the danger zone, and proceeds to go over the crossing and is overrun by a train which the traveler either did not see at first glance after passing the obstruction, or which ran over him because of his mis-judgment of the speed of the train. Cases involving such a situation must not be mistaken as being of influence here.

The case of Jackson v. Southwest Missouri R. Co., 189 S. W. 381, a divisional opinion of our Supreme Court decided in 1916, and not without dissent, under close scrutiny of the facts differs from the case at bar, in this: In that case the plaintiff was coasting on a noiseless cycle and approached a crossing at a speed of from four to four and one-half miles an hour. There was a cemetary wall to the north which cut off his view in that direction, but he had a clear sweep of vision to the south. When he reached the end of the cemetery wall, he looked north and saw no train; he then looked south, where his view was clear. It was then that he proceeded to make the crossing and was struck by a rapidly approaching car. It appears that the plaintiff in that case passed the cemetery wall under such speed as to be able to stop his cycle had he observed danger and applied the brakes as soon as he emerged from behind the wall. It was only after he had looked for the car and seeing none in sight had started across the tracks that he attempted to stop his motorcycle. The statement of facts by the learned commissioner who wrote that opinion is, in part: "He looked north up the railroad track and did not see or hear any car. His attention was drawn more in that direction on account of the brush and wall. He then looked south, where he had a clear view and seeing nothing went on."

And so, taking the evidence most favorable to plaintiff in that case, that is, that he came out from behind the wall to a point where he had a view of the track when he was fifty feet from the track, and that he could have stopped his motorcycle under existing circumstances

from thirty-five to forty feet, he did therefore have his motorcycle under such control when he emerged from the side of the wall that he could have stopped same before entering upon the tracks. He looked up the track, after getting the view, with his cycle under control to stop it before reaching the railroad track, but when he saw no train in sight he started over and was run down by the train.

In Evans v. I. C. R. Co., 233 S. W. 397, more recently decided by our Supreme Court, in Banc, there being of course a different state of facts—the traveler there being able to stop almost immediately, yet the court in discussing the duty of the traveler when approaching a railroad crossing, used this language: "It was his duty to approach the crossing at such speed that he could stop after reaching a point where he could see the approaching train and before coming within the danger zone."

This court as early as Dey v. United Railways Co., 140 Mo. App. 461, 120 S. W. 134, decided that the mere facts of looking and listening by a traveler approaching a railroad crossing is not always a performance of the duty incumbent upon him, "for he must also exercise care to make the act of looking and listening reasonably effective. He must not approach the track at such a rate of speed that when he reaches the point where he can see or hear the train it is too late to protect himself from injury."

Until by direction of our Supreme Court in a case clearly pointing out to us in a different way, we cannot conscionably rule otherwise than that it is negligence as a matter of law to blindly run an automobile from behind known obstructions onto a railroad crossing under circumstances as depicted above.

We therefore hold that the trial court committed reversible eror in giving plaintiff's instructions 1, 2 and 3, in that these instructions submitted plaintiff's contributory negligence as a question for the jury to de-

termine, when such appears conclusively as a matter of law.

The case was also submitted to the jury on the humanitarian doctrine, which defendant insists was not warranted. With this we cannot agree. As to the speed of the street car, the most favorable evidence to plaintiff is the testimony of the motorman, Mahoney. He testified that the car was traveling at a rate of ten miles an hour, and that he saw plaintiff forty feet from the track; that at twenty-five feet from the track she seemed to shift the wrong gear, and instead of stopping lunged forward. He also testified that he did not begin applying the brakes, or putting on the reverse lever until his car had reached the center of Manchester Road.

There is testimony that the car could have been stopped if traveling at twelve miles, in thirty-three feet, and if traveling ten miles an hour in thirty feet. It is admitted that the car was twenty feet south of the south line of Manchester Road when the motorman first saw plaintiff, and it is equally well established that the collision took place three feet north of the center line of Manchester Road. Accordingly, Manchester Road being sixty feet wide, there was a clear distance of fifty-three feet in which to stop the car to avoid the collision. Plaintiff's testimony is to the effect that she at no no time used the wrong lever, but that she applied the brakes from the very first moment that she saw the car and when she was seventeen feet from the track. Under that state of facts the court properly submitted the case under the humanitarian or last clear chance doctrine.

Defendant makes the point that plaintiff cannot recover in any event because the evidence shows that the automobile ran into the street car, and not that the street car struck the automobile, and relies upon McCreery v. United Railways Co., 221 Mo. 118, 120 S. W. 24. We rule against defendant in this particular,

as the testimony of plaintiff and her mother establishes the fact that the automobile had stopped and that the defendant's car struck the automobile, causing the injury.

We do not deem it necessary to discuss the remaining assignments of error presented by appellant.

It is therefore our view that the judgment herein should be reversed and the cause remanded. It is so ordered.

*Allen,* P. J., and *Becker,* J., concur.