MELVIN WRIGHT v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—37 S. W. (2d) 591.

Division One, March 31, 1931.

*E. T. Miller* and *Ward & Reeves* for appellant.

*Charles T. Bloodworth* and *Sam M. Phillips* for respondent.

GANTT, P. J.—Action to recover for injury to automobile and for personal injuries sustained by plaintiff in a collision of his automobile with an engine of defendant at "Buncomb Crossing" in Naylor, Ripley County, Mo. It is alleged in the petition that defendant negligently failed to give statutory warning of the approaching train. It is also alleged that defendant negligently stored cars on its sidetrack, with a car occupying a part of the highway, thereby obstructing plaintiff's view of the approaching train and preventing him from hearing the noise of said train and thereby preventing the engineer and fireman from seeing plaintiff approaching the crossing. It is also alleged that defendant negligently ran the train, while hidden by the cars on the sidetrack, at a dangerous speed, and that as a direct result of defendant's negligence, plaintiff was injured.

The answer was a general denial, with pleas that the injury was due solely to negligence of plaintiff and that he was guilty of contributory negligence.

Trial was had as if the reply was a general denial. The issues of failure to give statutory warning and storing cars on the side-

track were submitted to the jury. Judgment for $10,000, and defendant appealed. It contends plaintiff was guilty of contributory negligence as a matter of law.

There is evidence tending to show the following: In the vicinity the railroad runs northeast and southwest. The sandy highway proceeding northwardly from the town of Naylor crosses the railroad at the "North Crossing," which is 447 feet by rail and 600 feet by highway northeast of "Buncomb Crossing," where the collision occurred. After the highway crosses the railroad at "North Crossing" it proceeds northwardly 150 feet, where it curves and proceeds south to "Buncomb Crossing" in the southwest part of Naylor. In other words, the highway crosses the railroad twice in this vicinity. A parallel sidetrack extends from northeast of the "North Crossing" to a point some distance southwest of "Buncomb Crossing." The view of the railroad to the southwest of one traveling northwardly from Naylor to the "North Crossing" was obstructed, and especially by a pile of ties just southeast of the highway and within eight feet of the main track. On the southwest side of this crossing and just northwest of the sidetrack are two large oil tanks, the oil company's office, railroad stock pens and another pile of ties. In addition there were nine cars standing on the sidetrack just northeast of "Buncomb Crossing" and twenty-three cars on the sidetrack southwest of the crossing, with the north car of the twenty-three cars extending fourteen and one-half feet into the highway. The cars to the southwest of "Buncomb Crossing" obstructed the view of one driving an automobile on the highway from the north until the front wheels of the automobile were within twenty-two inches of the north rail of the main track at this crossing.

This was not a trunk line. Only two passenger trains and a few freight trains were scheduled for a day. Plaintiff resided on a farm three miles west of Naylor, was familiar with the schedule time of the passenger trains, the obstructions near the crossings and the location of the cars standing on the sidetrack for some days. On June 6, 1927, at about 6:35 P. M. plaintiff, on his way home from Naylor, drove northwardly in his Ford truck, loaded with baby chickens, over the highway toward the "North Crossing." As he approached the crossing Adam Hawks and son were also approaching it from the opposite direction in a horse-drawn wagon, behind which was fastened a cultivator as a trailer. Plaintiff stopped when the horses were on the track and listened, but heard no train. He also looked to the southwest, but the ties obstructed his view. He then, while the horses were moving over the tracks, proceeded over the crossing. While traveling about twenty-five feet over the crossing, he had an unobstructed view

of the railroad, and could have seen an approaching train from the southwest from the time it reached a point about a mile from the "North Crossing." He testified that he did not look in this direction at that time, for the reason he was giving attention to the cultivator, which he thought might collide with his car as he traveled over this unobstructed part of the crossing. After crossing the "North Crossing" plaintiff proceeded northwardly and around the curve of the highway and then south to "Buncomb Crossing." Approaching this crossing he could not see a train from the southwest on account of the twenty-three cars on the side-track. He looked over the top of the cars for smoke from an engine, but saw none. He listened for the noise of a train and warning signals, but heard none. Thereupon he drove slowly on the crossing and the collision occurred. On account of the baby chickens he traveled from Naylor to "Buncomb Crossing" at a speed of only five or six miles an hour. At the time of the collision the train was twenty-seven minutes late and running thirty miles an hour. However, steam had been shut off as the train approached the crossing and it may have been moving at greater speed. The fireman saw the automobile as it emerged from behind the standing cars. The front of the engine obstructed the view of the engineer and he did not see the automobile until the moment of the collision.

I. Defendant contends the failure of plaintiff to look for an approaching train while crossing the tracks of the "North Crossing" was contributory negligence as a matter of law. The contention rests on the statement of plaintiff on cross-examination that "he failed to look because he thought the train had passed." He was cross-examined at length with reference to his failure to look through the open space to the southwest for an approaching train while he was traveling over the tracks of this crossing. During the examination he also testified that Hawk stopped on the other side of the crossing, which caused him to think a train might be approaching. However, when Hawk proceeded to drive the team over the crossing, he concluded no train was approaching. He also testified that as he traveled over the tracks his attention was given to the movements of the cultivator.

Thus it appears the statement that "he failed to look because he thought the train had passed" does not stand alone. In ruling the demurrer all of his testimony on the question should be considered. When so considered it cannot be held that his failure to look at the time and place was negligence as a matter of law. Moreover, neither the engineer nor fireman testified they saw plaintiff's truck

moving over the "North Crossing." If plaintiff, by looking to the southwest as he drove over this crossing, could have seen the train, it follows the engineer and fireman who were in their seats could have seen the truck at the crossing. Taking the speed of the train and automobile as given and the distance traveled by plaintiff from the "North Crossing" to "Buncomb Crossing" as given, the train could have been seen by plaintiff from the "North Crossing." But these speeds and distances were estimates and a jury might believe from the failure of the engineer and fireman to testify on the question that the train was around the curve southwest of the crossings and could not have been seen by plaintiff from the "North Crossing."

II. Defendant next contends the failure of plaintiff to stop before driving on "Buncomb Crossing" that he might effectively listen for the noise of an approaching train was contributory negligence as a matter of law.

The highway was sandy, the automobile making only the usual noise and plaintiff as he approached the crossing could hear the baby chickens "peep." Clearly, he was not for this reason guilty of negligence as a matter of law.

At the request of plaintiff, the court instructed the jury as follows:

"The court instructs the jury that if you believe from the evidence that defendant negligently permitted obstructions consisting of box cars and cattle cars, if you find that they were such obstructions. to be placed and remain upon its passing track on the south side of the crossing where the collision occurred, so as to obstruct the view of plaintiff in approaching said crossing, and if you believe such acts, if any, constitute negligence upon the part of the defendant. and that they were the proximate cause of plaintiff's injuries. if any, and that plaintiff did not by his own negligence contribute to his injury, then you will find your verdict for the plaintiff."

Defendant challenges the instruction. It contends it had the right to store cars on its sidetracks; that having said right it would not be negligence to do so; that the instruction is without authority in this State; that it is in conflict with the general rule in other jurisdictions and that it could not be a ground for recovery.

It will be noted that the instruction is neither directed against the car extending into the highway, nor the obstruction of the view by cars stored so near the crossing that a traveler while in the exercise of ordinary care could not learn of an approaching train in time to avoid a collision. It deals solely with the question of storing cars on the south side of the crossing.

The mere storing of cars on the sidetrack and thereby obstructing the view and hearing of plaintiff could not be an independent ground of recovery for the defendant had the right in the course of its business to do so. The rule is stated in Bruggeman v. Illinois Cent. Railroad Co., 134 N. W. (Ia.) 1079, 1. c. 1080, as follows: "That the placing of freight cars upon a sidetrack so as to obstruct the view of a crossing would not be deemed as an independent ground of negligence is too plain to require argument. The authorities are practically uniform on this question." [22 R. C. L. 994, 995; M. K. & T. Ry. Co. v. Perino, 47 A. L. R. 283, 287 (note).]

Plaintiff states the instruction was taken from Galveston H. & S. A. Ry. Co. v. Michalke, 37 S. W. (Tex.) 480, 14 Tex. Civ. App. 495. This case was overruled in Galveston H. & S. A. Ry. Co. v. Harris, 53 S. W. (Tex.) 599, 1. c. 601. The instruction was erroneous and prejudicial.

At the request of plaintiff, the court also instructed the jury as follows:

"The court instructs the jury that it was the duty of the defendant in the movement of its trains along its tracks across the public highway in question, to exercise reasonable care and diligence to warn travelers upon said highway of the approach of its trains, in order to prevent accidents at such crossing, and if there were obstructions along and on said crossing which prevented a train of cars from being seen as a traveler upon the highway approached the crossing, the degree of care required is increased according to the liability or danger at such crossing; both the traveler and the company are charged with a higher degree of care under such circumstances, than they otherwise would be, the one to avoid being injured and the other to avoid inflicting an injury."

Defendant also challenges this instruction. It contends that the operators of the train on approaching the crossing were only required to give the statutory signal. Whereas, the instruction increased the care required according to the danger of a collision at the crossing. It also contends that only ordinary care was required of it on approaching the crossing, whereas, the instruction required more than ordinary care.

The statutory signal is the minimum requirement. If defendant by obstructions to view and hearing made the crossing more hazardous, it was the duty of both plaintiff and defendant to use such care on approaching the crossing as was commensurate with the increased hazard occasioned by the obstruction. Of course, this would be ordinary care. The great weight of authority sustains this view. [Stepp v. Ry. Co., 85 Mo. 229, 235; Moberly v. Ry. Co., 17 Mo. App. 518, 540; Louisville & N. Railroad Co. v. Locker's

Admrs., 206 S. W. 780, 781; Danskin, Admrx., v. Railroad Co., 22 L. R. A. (N. S.) 232, note, 233, 234.] Any statement to the contrary in Porter v. Mo. Pac. Ry. Co., 199 Mo. 82, and other cases, if any, are on this question overruled. However, a higher *degree* of care was not required of parties, but to be in the exercise of ordinary care under such circumstances they must on approaching the crossing increase the care commensurate with the hazard of passing over the crossing. The instruction should not have required of the parties a higher *degree* of care.

We next consider the act of defendant in storing the north car of the line of twenty-three cars on the southwest side of the crossing fourteen and one-half feet into the highway. This was negligence. [Close v. Lake Shore & M. S. Ry. Co., 41 N. W. (Mich.) 828, l. c. 830; Harvey v. Ill. Cent. Railroad Co., 167 S. W. (Ky.) 875, l. c. 877.] As stated, plaintiff traveled at five or six miles an hour from Naylor to this crossing. When he proceeded to ascend the slight embankment to the tracks he reduced the speed. Now if this car had not extended into the highway, the wider view open to plaintiff as he neared the main track might have afforded him an opportunity to stop in time to have avoided the collision. We think this question would be for the determination of the jury.

The right to obstruct the view of a traveler on a highway by cars stored so near the crossing that the traveler while in the exercise of ordinary care could not learn of an approaching train in time to avoid a collision is not presented by the record for review. Therefore, we reserve the question. Other assignments of error are without merit, or may not appear in the record of another trial.

It follows the judgment should be reversed and the cause remanded. It is so ordered. All concur.