EMMA J. WOLF, Administratrix of the Estate of ARTHUR H. WOLF, v. NEW YORK, CHICAGO & ST. LOUIS RAILROAD COMPANY, a Corporation, Appellant.—148 S. W. (2d) 1032.

Division Two, March 12, 1941.

*Jones, Hocker, Gladney & Grand* and *Web A. Welker* for appellant; *W. T. West* of counsel.

*B, Sherman Landau* for respondent.

626

WESTHUES, C.—This suit was filed by respondent, administratrix, to recover damages for the death of her husband, Arthur H.

Wolf, who lost his life, on December 9, 1937, when one of defendant's passenger trains struck a mill truck driven by deceased. The accident occurred at a crossing located about one and one-half miles south of Alhambra, Illinois. A trial in the Circuit Court of the City of St. Louis resulted in a judgment of $10,000 in favor of plaintiff on the first count, and on the second count $500 for damages to the truck. From the judgment entered the defendant railroad appealed.

The facts and circumstances surrounding the collision about which there was little dispute, are as follows: It must be kept in mind that appellant's principal point upon which a reversal of the judgment is sought is that the trial court should have sustained a demurrer to the evidence. Deceased was twenty-nine years of age. He was engaged in operating a business of collecting milk at farm houses in the neighborhood of Alhambra. He owned eight trucks and each had a definite route in collecting milk. The milk was taken to a central point and from thence transported to St. Louis. For about a month prior to his death deceased had operated a truck over the route which crossed the railroad tracks at the point of the collision in question. On the morning of December 9, 1937, he and one Robert Philippi, who was an employee of deceased, were engaged in making that route. The last stop made prior to the collision was at a farm house about a mile or so north of the crossing in question. The road over which they were traveling ran due north and south at the point where it crossed defendant's tracks, which ran in northeasterly and southwesterly directions. The collision occurred at 7:28 A. M. The train which struck the truck was fifty-one minutes late and was traveling in a southwest direction at a speed of fifty miles per hour. A freight train going northeast was due at the crossing at 7:20 A. M. It was a cold, foggy and frosty morning. The sun had been up a few minutes but was not bright. To the east and parallel to the road was a hedge fence which extended north from the right-of-way of the railroad for about two hundred and twenty feet. Along the north edge of the railroad right-of-way were a number of trees and some brush. The milk truck was loaded with a large number of both empty and filled milk cans, having a capacity of eight and ten gallons each. The cold, foggy atmosphere had caused the vegetation to be covered with frost. The engineer testified that he saw the truck when the train was at the whistling post, about thirteen hundred feet northeast of the crossing. He estimated the speed of the truck to have been about ten or twelve miles per hour and testified that it continued at that same rate of speed until it was struck by the train. The whistle of the engine was sounded at intervals between the whistling post and the crossing and the bell on the engine was ringing. The engine struck the truck at the left rear corner. The front wheels had cleared both rails and so had one of the rear wheels. The crossing being at an angle the other rear wheel was near or on the south

rail at the time of the impact. The engineer testified that he made no attempt to slacken the speed of the train until it was about one hundred and fifty feet from the crossing and that the truck was at that time coming into the railroad right-of-way. The engineer further testified that he made a service application of the brakes, and that it takes about two seconds before these brakes have any effect on the speed of the train. A train traveling at fifty miles per hour covers a distance of about one hundred and fifty feet in two seconds. The engineer stated the train had not slackened its speed when it struck the truck. The case was submitted to a jury on the question of whether the engineer negligently failed to slacken the speed of the train after seeing deceased in a position of danger. By this instruction the jury was also required to find, before a verdict for plaintiff was authorized, that the deceased was at the time exercising ordinary care for his own safety.

Appellant asserts that its demurrer should have been sustained for two reasons. First, because the evidence failed to disclose any negligence on the part of the engineer, and second, because the evidence disclosed that the deceased was negligent as a matter of law. We think the evidence sufficient to sustain a finding that the engineer was negligent in failing to slacken the speed of the train. The evidence, as given by one of defendant's witnesses, was, that less than one-half second, in fact one-fifth of a second, would have been sufficient to have permitted the truck to pass beyond the reach of the train. The engineer testified that he did not set the emergency brake when he realized that the truck was not going to stop, because it would have endangered the passengers on the train. A witness testified for plaintiff that if an application of the emergency brakes had been made when the service application was made in this case it would not have endangered the passengers, and such an application would have slackened the speed of the train sufficiently to have permitted the truck to pass in safety. This witness had had twenty-five years' experience as an engineer on passenger trains. The fireman of the crew, who had had considerable experience as an engineer, testified for the defendant. He was not questioned upon the point of whether an emergency stop would have endangered the passengers. The jury was authorized to find that had the engineer applied the emergency brake at the time he applied the service brake the truck would not have been struck. The evidence also justified a finding that an emergency stop would not have endangered the passengers on the train. There was evidence that emergency applications of the brakes are not infrequently made on passenger trains. Cases in this court support that theory. Note that in Stark v. Berger, 344 Mo. 170, 125 S. W. (2d) 870, the engineer testified that he set the brakes in emergency on a passenger train traveling fifty miles per hour when the train was one hundred and fifty feet from a crossing, and that it came

to a stop only a few feet beyond the crossing. In the case now before us the train did not slacken its speed until it had passed the crossing, and did not stop until it was about one-fourth mile beyond the crossing. The facts and circumstances as outlined above are, under the rulings of Illinois cases, sufficient to sustain a charge of negligence on the part of the engineer. [See Voorhees v. C. & A. Railroad Co., 215 Ill. App. 531.] We also note that in that case the emergency brake of a passenger train was used while the train was traveling between forty-five and sixty miles per hour. The St. Louis Court of Appeals reached the same conclusion in Philippi v. New York, C. & St. L. Ry. Co., 136 S. W. (2d) 339, l. c. 343. Philippi lost his life in the same collision as Wolf.

██ We are also of the opinion that the question of whether deceased was negligent, under the facts and circumstances of this case, was for a jury. Deceased was traveling on a regular schedule which brought him to this crossing about the same time each morning. He was acquainted with the regular train schedule. A witness, who had driven this truck prior to the deceased, had never encountered the passenger train at this crossing. When the deceased approached the crossing there was a train due from the southwest. The train which struck him was traveling in the opposite direction and was fifty-one minutes late. The sun had risen only a few minutes before, and deceased, if looking in the direction of the train, would have been looking toward the sun through hedge and brush covered with frost. There was evidence that the empty cans in the truck rattled and may have prevented him from hearing the warning signals. The Illinois courts have held, in passing upon the question of the negligence of an injured party at a crossing, that the jury has the right to consider the fact that the train which caused the injury was late and that the injured party was acquainted with the schedule of trains. [Brown v. Ill. Terminal Co., 319 Ill. 326, 150 N. E. 242; Penn. Railroad Co. v. Moffitt, 1 Fed. (2d) 276.] A circumstance also to be considered is that a train was due from the opposite direction. [Fowler v. Chicago & E. I. Ry. Co., 234 Ill. 619.] Both parties in the truck lost their lives in the collision. They cannot speak, but the natural instinct of man is to preserve life and avoid injury. [C. & E. I. Ry. Co. v. Beaver, 199 Ill. 34. See also Philippi v. N. Y., C. & St. L. Ry. Co., 136 S. W. (2d) 339, l. c. 341, 342 (1-4), and cases there cited.] We rule, therefore, that the question of whether deceased was negligent was for the jury.

██ Appellant complained of plaintiff's instruction number one, which authorized a verdict for plaintiff. Appellant contends that the instruction followed the Missouri humanitarian doctrine and not the Illinois rule. This same question was presented to the Court of Appeals in the Philippi case, where a similar instruction was given, and decided adversely to appellant's contention. [See 136 S. W.

(2d) 339, 1. c. 344 (13).] We think the question was correctly decided by the Court of Appeals. It will be noted that the instruction, which is set forth in full in the opinion of the Court of Appeals, expressly required the jury to find, before authorizing a verdict for plaintiff, that the deceased was exercising ordinary care for his own safety and that the defendant was negligent. The trial court gave, at appellant's request, a number of instructions on this point, emphasizing that before a verdict could be returned for plaintiff the jury must find that deceased was not negligent, that defendant was negligent and that such negligence caused the collision. The court also instructed the jury, at appellant's request, that the burden of proof on these propositions rested on the plaintiff.

■ Another attack made upon the instruction is, that it required the jury to find that deceased was exercising ordinary care for his own safety and that he was oblivious of his said position of peril and danger. Appellant argues that both propositions could not be true, and therefore the instruction authorizing a verdict required a finding of inconsistent facts for the jury to reach a decision. We cannot agree with appellant. A jury may have found, under the facts and circumstances presented, that the deceased was watching for a northeast bound train which was over-due only a few minutes; also, that due to the hedge and brush covered with frost and to the fact that deceased was facing the sun when looking toward the northeast for a train, he may not have noticed it. The fact that the engineer saw the truck does not necessarily mean that the driver of the truck could have seen the train. The engineer was looking away from the sun. The top of the truck was about three feet higher than the cab. It was painted white and the cab red. So a finding, by the jury, that deceased was at the time exercising ordinary care was not necessarily inconsistent with the finding that he was oblivious. Illinois courts have so held. Note what was said in Brown v. Ill. Terminal Co., 237 Ill. App. 145, 1. c. 151:

"However, it may be observed that it cannot be said as a matter of law that the failure to look or listen, under all circumstances, will bar a right of recovery. It is usually a question of fact for the jury to determine, in view of all surrounding circumstances, whether the failure to look or listen constitutes a lack of due care. [Dukeman v. Cleveland, C., C. & St. L. R. Co., 237 Ill. 104-107; Chicago & E. I. R. Co. v. Crose, 214 Ill. 602-605; Chicago City R. Co. v. Nelson, 215 Ill. 436-440; Gibbons v. Aurora, E. & C. R. Co., 263 Ill. 266-272.] We are inclined to the opinion and hold that under all the facts and circumstances surrounding the injury in question as heretofore referred to, it was a question of fact for the jury as to whether appellee, just prior to and at the time of his injury, was in the exercise of due care for his own safety.]"

The point is ruled against appellant and the judgment of the trial court is affirmed. *Cooley* and *Bohling*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.

## ON MOTION FOR REHEARING.

PER CURIAM:—Appellant in its motion for rehearing charged that in our opinion we incorporated facts cited in opinions in other cases and considered such facts as evidence against appellant in this case. If that charge were true appellant would have just grounds for complaint. Such is not the case. Respondent's witness, Kaveney, had had thirty years' experience as an engineer. He testified that if the engineer operating the train had applied the emergency brake at the time the service brake was applied the truck in which deceased was riding would have cleared the track in safety. He also testified that the use of an emergency brake under the circumstances would not have been dangerous. Kaveney's evidence in conjunction with the evidence of the engineer operating the train made a submissible case of negligence. Appellant in its brief, however, made the following assertion with reference to the evidence of Kaveney:

"In the case at bar the respondent relies upon the testimony of Jeremiah Kaveney to present a question of fact as to defendant's negligence.

"Kaveney, it will be noted, never in his life operated an engine like the one involved in this case. In fact, he didn't know until informed that he was holding a photograph of it upside down. He didn't attempt to say that air brakes on all trains were uniform in their operation. His testimony is but the rankest conclusion as to what might have been done, and in addition to that, presents not only a practical but physical impossibility."

In its brief appellant urged this court to declare as a matter of law that the evidence of Kaveney should be disregarded because it presented a physical impossibility. It was in answer to that contention that we cited cases where engineers, who had operated trains figuring in collision cases, had testified that they applied the emergency brake on passenger trains under similar circumstances without endangering the passengers. That was the only purpose of citing those cases. We adhere to our original opinion. The evidence without doubt justified a finding that the engineer was negligent, also that we were not authorized to ignore the evidence of Kaveney.

A more serious charge in the motion for rehearing is, that this court misstated the facts and that absent such misstatements the evidence showed the deceased would have been guilty of contributory negligence as a matter of law. We grant that the evidence presented a close question on this point. The writer has reread the entire record in considering the motion for rehearing. We will consider the charges of misstating the facts in the order as made in the motion. Appellant states:

"a. The opinion recites, 'A freight train going northeast was due at the crossing at 7:20 a. m.' There is no such evidence in the record."

Appellant is correct. There is no such evidence. The record did show that a freight train was due at the watch-tower at Alhambra at 7:20 A. M., a distance of about two miles to the northeast. The train which struck the truck in question traveled that distance in less than three minutes. The misstatement in the opinion was not serious enough to be a material variance. The next charge is:

"b. The opinion recites: 'He (Wolf) was acquainted with the regular train schedule.' There is not one scintilla of evidence in the record that the deceased ever heard of a train schedule."

The record does not contain any direct evidence to support that statement, but such fact may be inferred from the evidence. Note that appellant in its brief stated as follows:

"The undisputed testimony shows that the deceased, Arthur H. Wolf, had lived his whole life in the neighborhood of the crossing, and had, for several months immediately preceding his death, passed over the crossing at least once each day, and was thoroughly familiar with the existing surroundings and conditions."

It might be argued that the deceased was acquainted with all the facts and circumstances except the train schedule. But note that appellant introduced evidence tending to prove that the train which struck the truck was frequently late. The collision occurred on December 9. Evidence of the time when the train passed through on previous days was offered by appellant which showed it was frequently late. Appellant also introduced evidence showing that the freight train due to go northeast about the time of the collision was frequently late, at times as much as five hours. This evidence was worthless if the deceased had never heard of a train schedule. We are justified in asserting that the evidence was offered for the sole purpose of showing that the deceased not only knew the regular train schedule, but also had knowledge of the fact that the trains were frequently late, and therefore he could not have placed any reliance on the regular schedule. In view of that evidence and appellant's assertion that the deceased "was thoroughly familiar with the existing surroundings and conditions" we may assert that appellant assumed the deceased was acquainted with the train schedule. Again, appellant states in its motion:

"c. The opinion recites: '. . . deceased, if looking in the direction of the train, would have been looking toward the sun through hedge and brush covered with frost.' Obviously, this is not true, as shown in our suggestions in support."

Appellant in its original brief said:

"Furthermore, the appellant was not required to anticipate or foresee that the sun might be shining in the eyes of the driver of an

automobile as he approached the crossing, or that he would not be wearing dark glasses as a protection against the rays of the sun.''

Did appellant, when preparing the original brief, have in mind that the sun might have had a bearing on the case? The answer is obvious.

Appellant also found fault with our statement that the hedge extended north from the right-of-way of the railroad for about two hundred and twenty feet. The photographs of appellant showed that the hedge was not as thick at the right-of-way, but there was a hedge. Some of it had been cut a number of feet above the ground and the brush left there. Appellant also complained of the following statement in our opinion:

'' 'The fact that the engineer saw the truck does not necessarily mean that the driver of the truck could have seen the train.' ''

Appellant states that the engineer testified he saw a man in the truck. The engineer did not say at what point he saw the man. He may have seen him after the truck came upon the right-of-way of the railroad. The engineer, however, testified that he saw the truck when the train was over thirteen hundred feet from the crossing. The truck at that time was behind a thick hedge and the evidence justifies the inference that the driver of the truck could not see the train. After a careful review of the case in the light of the points made in the motion for rehearing we are of the opinion that any misstatements of facts in the opinion are insignificant.

Appellant also complained that we ignored Missouri cases cited in its brief. Appellant insisted that the case was controlled by the Illinois law. We, therefore, confined our research to a great extent in cases from that State. It was also charged that we overlooked three Illinois cases cited by appellant which presented facts exactly parallel to those in the case at bar. A reading of those cases will disclose that there is some similarity in the facts, but in none of the cases are all the facts and circumstances present that were present in this case. The cases cited are: Sunnes v. Ill. Cent. Ry. Co., 201 Ill. App. 378 (erroneously cited by appellant as 291 Ill. App.); Cline v. C., M. & St. P. Ry. Co., 198 Ill. App. 163; Ridgway, Admr., v. Ill. Cent. Ry. Co., 24 N. E. (2d) 759. In the latter case the court in the course of the opinion said:

"Many cases have been cited by plaintiff in which courts have refused to find contributory negligence as a matter of law. Each case presenting the question of contributory negligence must be judged on the basis of its own peculiar facts.".

In our opinion we referred to the fact that both parties in the truck lost their lives and they could not speak, but that the natural instinct of man is to preserve life and avoid injury. Appellant asserts that the presumption of due care to be drawn from the natural instinct of self-preservation can only be applied in death cases where there are no eyewitnesses to the accident. The case before us did not

634

rest on any such presumption. There was sufficient evidence to justify a submission of the question to a jury without resorting to any such presumption. However, the instinct of self-preservation in man is present in cases of accidents observed by eyewitnesses in the same degree as in those not so witnessed. The law, however, invokes the presumption out of the necessity of the situation when there are no eyewitnesses. [Goodman v. Chicago & E. I. Ry. Co., 248 Ill. App. 128, l. c. 134.] In the case cited in our opinion, C. & E. I. Ry. Co. v. Beaver, 199 Ill. 34, a young man lost his life in a collision at a crossing. The deceased was riding in a buggy drawn by a horse. Both the engineer and the fireman of the train saw the horse when only a few feet from the track. Two eyewitnesses to the accident, yet, the Supreme Court of Illinois in passing on the question of whether the deceased was guilty of contributory negligence as a matter of law said:

"The natural instinct prompting to the preservation of life and the avoidance of injury, and consequent suffering and pain, may also enter into the consideration of the jury in determining the question."

A general discussion, annotated with citations of numerous cases from various states on this subject, will be found in 22 C. J. 94, sec. 35; 45 C. J. 1155, secs. 744-748. After a careful consideration of all the points in the motion for rehearing and a reconsideration of the case as a whole we are constrained to adhere to the conclusion reached in our original opinion.

The motion for rehearing is overruled.