Roy ZUMAULT, Respondent,

v.

WABASH RAILROAD COMPANY,
a Corporation, Appellant.

No. 45480.

Supreme Court of Missouri,
Division No. 2.

May 13, 1957.

Motion for Rehearing or to Transfer to
Court en Banc Denied June 10, 1957.

Albert E. Schoenbeck, St. Louis, for defendant-appellant, Wabash R. Co.

James E. Hullverson, Hullverson & Richardson, St. Louis, for plaintiff-respondent, Roy Zumault.

STORCKMAN, Judge.

In this action to recover damages for personal injuries resulting from a collision between plaintiff's automobile and defendant's train, the plaintiff obtained a judgment for $17,500 in the Circuit Court of the City of St. Louis. On appeal the defendant presents the sole question of whether plaintiff was guilty of contributory negligence as a matter of law.

The accident occurred within the city limits of Wellsville, Missouri, at the Fifth Street crossing over defendant's railroad tracks. The plaintiff was familiar with the crossing. He lived within two blocks of it and had passed over it many times. About noontime on July 9, 1953, the plaintiff was driving his 1941 Oldsmobile car south on Fifth Street on his way home to lunch. It was a dry, clear day and the sun was shining. Plaintiff claims that as he approached the crossing, his view westward was partially obscured by weeds growing on defendant's right of way. While he was unable to see the train, he heard it whistle and immediately applied his brakes and stopped his car, but in such close proximity to the main line of the defendant's railroad tracks that a fast-moving eastbound passenger train struck and sheared off the front bumper of his automobile, together with portions of the front fender, grillwork and hood, but did not strike the wheels of the automobile. Plaintiff was thrown about inside the automobile and received an injury to his back which was diagnosed as a herniated intervertebral disc.

The train that struck plaintiff's automobile consisted of ten or eleven cars and was powered by a two-unit Diesel locomotive. Its destination was St. Louis and it was running late. The testimony of defendant's fireman was that the speed of the train at the time of the accident was 70 to 78 miles per hour. The plaintiff testified that the train appeared to him to be running about 100 miles per hour. The sole ground of negligence upon which plaintiff submitted his case to the jury was violation of a city ordinance of Wellsville prohibiting the operation of a railroad train within the city limits at a greater speed than eight miles per hour. Defendant's motion for a directed verdict was denied by the trial court. The issue of plaintiff's contributory negligence was then submitted to the jury and resolved favorably to the plaintiff. The burden of proving plaintiff's contributory negligence was on the defendant. The plaintiff was not obliged to prove as a part of his case that he was in the exercise of due care for his own safety.

The defendant states its contention on appeal in this manner: "Plaintiff was guilty of such negligence as a matter of law as to bar his recovery in that he: (1) failed to look for or see the approaching train; (2) failed to listen for or heed the warning signals of the train; and (3) failed to have his automobile under such control that he could stop it before it fouled the track." Before the court can declare that contributory negligence is shown as a matter of law, such negligence must clearly appear from admitted or conclusively proved facts. If reasonable men may honestly differ with respect to the inferences to be drawn from such facts,

then the question whether the driver exercised the care required for his own safety is for the jury. Monroe v. Chicago & A. R. Co., 280 Mo. 483, 219 S.W. 68, 71; Fitzpatrick v. Kansas City Southern Ry. Co., 347 Mo. 57, 146 S.W.2d 560, 566; Swigart v. Lusk, 196 Mo.App. 471, 192 S.W. 138, 140.

In the circumstances of this appeal plaintiff's evidence must be considered as true and he must be given the benefit of any and all reasonable inferences therefrom and the aid of any evidence offered by the defendant which is favorable to him. In order for the defendant to maintain its position here it must show that the evidence, even when considered most favorably to the plaintiff, unequivocally establishes his contributory negligence. Rentfrow v. Thompson, 348 Mo. 970, 156 S.W.2d 700, 703 [7].

Applying these rules we can readily dispose of defendant's contention that the plaintiff failed to listen for or heed the warning signals of the train. Plaintiff's evidence tended to show that his hearing was good, the windows of his automobile were down, and he heard no warning bell or whistle in time to permit him to stop his automobile in a position of safety. There was no evidence that he was inattentive and not listening. The triers of the facts are authorized to accept his testimony and reject that of the fireman and other of defendant's witnesses who testified that the bell was rung and the crossing whistle was sounded. Dickerson v. Terminal Railroad Association, Mo., 284 S.W.2d 568, 572 [7]; Hutchison v. Thompson, Mo., 175 S.W.2d 903, 910 [7].

The remaining questions require a further outline of the evidence bearing thereon. Again the facts are stated most favorably to the plaintiff's case. At the place in question, defendant's railroad was deemed to run in an east and west direction and Fifth Street north and south. There were two parallel tracks across Fifth Street.

The one on the north was the main line and south of it was a switch or passing track. The train which struck the plaintiff's car was operating on the main line. Krekel Street was parallel with and about 50 feet north of the railroad tracks. Both Krekel and Fifth streets were surfaced with crushed rock or gravel and were without curbs. The traveled portion of each was about 15 feet wide. Fifth Street was downgrade from Krekel Street to the railroad tracks. One of plaintiff's witnesses estimated the railroad tracks to be about two feet lower than Krekel Street. The defendant's testimony was that the rate of declivity was two and a half inches in each ten feet.

Plaintiff's evidence tended to show that weeds were growing on defendant's right of way for a distance of about 600 feet west of Fifth between Krekel and the northern edge of the track ballast. The height of these weeds was in dispute. The defendant contended they were about knee high, while plaintiff's evidence tended to show that they were five to six feet in height. There were no weeds growing on the ballast which extended about eight or ten feet north of the tracks. From Fifth Street west defendant's tracks and right of way were upgrade, rising about five or six feet in a distance of approximately 600 feet.

Plaintiff's eye level, as he sat in his automobile, was 44 inches from the ground. About 40 feet north of the railroad tracks he could see defendant's railroad tracks westward for a distance of about 1,000 feet. He looked, saw no train, and continued toward the crossing. After he passed the open space about 40 feet north of the tracks, his view to the westward was obstructed by the growth of weeds and he was unable to see the track again until he was about eight or ten feet north of the main line. When he was a distance variously estimated at from 10 to 15 feet from the track, and traveling about 10 miles per hour, he heard the whistle of the train. Because of the weeds he could not then see the train, but estimated it to be about 600 feet away. He immediately applied his brakes and brought

**864**

his car to a stop when the front end was three or four feet north of the northern rail of the main line. He could then see the train approaching from the west and about 300 feet away. It appeared to him to be traveling at about 100 miles per hour. When the plaintiff stopped his automobile he did not know whether it was clear of the track, but he was afraid to try to back up, so he sat there and "hoped for good luck." His automobile was struck and the bumper and front end damaged as before stated.

■ Defendant contends, however, that the testimony of plaintiff and his witnesses must be disregarded, stating: "Plaintiff's photographic exhibits, undisputed measurements of objects in the pictures, and actual measurements of sight distances, establish the physical fact that the train could be seen approaching the crossing, and testimony contrary thereto must be rejected as contrary to the physical facts and without probative value." Defendant relies mainly upon Lohmann v. Wabash R. Co., 364 Mo. 910, 269 S.W.2d 885, and to some extent upon Donald v. Missouri-Kansas-Texas R. Co., Mo., 231 S.W.2d 627, to support this contention. However, the photographs and the measurements here involved do not fall within the rule of the cases cited. The photographs of the crossing and beyond it westward were taken the day following the accident. The photographer stood at a point 20 feet east of the crossing and about ten feet north of the northernmost rail of defendant's track. There was no question that from this point a person had a clear view of defendant's track to the westward. The plaintiff did not contend otherwise. In fact, it appears that when his automobile stopped he was approximately this distance north of the tracks and he testified that he could then see the train about 300 feet away. Nor do the photographs establish conclusively the height of the weeds on defendant's right of way west of Fifth Street. The pictures were taken near the edge of the ballast where it slopes away from the roadbed. They were not taken from points

on Fifth Street and at a height so as to be fairly representative of what plaintiff could see from his automobile as he approached the crossing. The measurements upon which defendant relies for the "sight distances" west of the crossing were taken January 30, 1956. Taken as they were in the winter time almost two and a half years after the accident, the weeds and foliage conditions were not the same. The "sight distance" measurements cannot be said to be representative of conditions existing on July 9, 1953. Other measurements taken by defendant presented no material variance. Neither the photographs nor the measurements taken were preclusive of the oral testimony in the case. Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W.2d 295, 298 [3]; Bretall v. Missouri Pac. R. Co., Mo.App., 239 S.W. 597, 599; Gulf, M. & O. R. Co. v Williamson, 8 Cir., 191 F.2d 887, 891 [4].

■ Defendant's evidence tended to show that the train which struck plaintiff's car was 920 feet long. By way of argument the defendant has presented mathematical computations based in part upon plaintiff's estimate of distances and speed which defendant claims conclusively demonstrate that plaintiff could have seen the train if he had looked when he was "about" 40 feet north of the track, at which place he testified he was traveling "about I would say 10 miles per hour" and could see the tracks westward "about a thousand feet, I imagine." The speed of the train was also estimated at 70 to 78 and 100 miles per hour and was not conclusively shown. Since much of the evidence consists of estimates which show on their face that they are not intended to be exact, the plaintiff is not precluded thereby; the calculations based thereon cannot convict the plaintiff of contributory negligence as a matter of law. State ex rel. Thompson v. Shain, 351 Mo. 530, 173 S.W.2d 406, 407–9 [2]; Smith v. Siercks, Mo., 277 S.W.2d 521, 525 [3]. Plaintiff was entitled to draw opposite conclusions from this evidence, as he did. We must further keep in mind that plaintiff

made his case for the jury on violation of the speed ordinance. The defendant is relying on other evidence in the case to prove contributory negligence as a matter of law, and any shortcomings or deficiencies in such evidence to prove defendant's contention does not detract from plaintiff's jury case.

On the evidence before us we cannot say that the plaintiff failed to look or looked negligently when he was approximately 40 feet north of the track or at any time when he had an opportunity to do so. Whether the plaintiff failed to look for or see the approaching train was a jury question.

Defendant's remaining contention is that the plaintiff negligently failed to have his automobile under such control that he could stop it before it fouled the track. The mere fact that plaintiff did not stop his automobile before it fouled the track does not justify the conclusion as a matter of law that he was not exercising the degree of care imposed by law upon the operator of a motor vehicle. Monroe v. Chicago & A. R. Co., 280 Mo. 483, 219 S.W. 68, 69 [6]. Such fact must be considered with all of the other evidence in the case.

There is no evidence that the plaintiff was driving his automobile at an unlawful speed, and we cannot say as a matter of law that the speed at which he was driving was unreasonable. The plaintiff testified that his automobile was moving at about 10 miles per hour when he first heard the train's whistle. The rate of speed was not further shown, but the defendant's fireman testified that the plaintiff "was not moving very fast" and that he stopped "before we hit him." There is no showing that the plaintiff was negligent in applying the

brakes, or that he did not make a good and timely stop after he heard the whistle of the oncoming train. We have heretofore considered and held that the issues of whether the plaintiff properly looked for trains as he approached the crossing and listened for the signals were for the jury. There is no evidence of how far the driver's seat was from the front end of plaintiff's automobile. We cannot conclusively say that the plaintiff could have seen the train approaching if he had stopped before he did.

Decisions involving crossing accidents are numerous and the law with respect thereto is well settled. Defendant has cited a number of these cases which correctly declare the applicable rules of law and in which the plaintiffs have been held contributorily negligent as a matter of law.[1] But, as stated in Flanagan v. St. Louis-San Francisco Ry. Co., Mo.App., 297 S.W. 463, 466: "The difficulty, of course, is in applying the law to the particular facts and circumstances in each case. Distances, speed, physical facts, and conduct of the injured party, together with all the other facts and circumstances, must be taken into consideration in passing upon the question of contributory negligence. Each case is more or less different on the facts, and no hard and fast rules may be laid down applicable alike to all cases."

The extremely high speed at which defendant's train was traveling within the city limits of Wellsville must be taken into consideration. While the plaintiff was charged with the highest degree of care, he could properly place some reliance upon defendant's observance of a lawful rate of speed. Todd v. St. Louis-San Francisco Ry. Co., Mo., 37 S.W.2d 557, 560; Dutton v. Kansas City Terminal Ry. Ass'n, 316 Mo. 979, 292 S.W. 718, 720 [2]; Monroe v. Chicago

1. See: Tietze v. New York, C. & St. L. R. Co., Mo., 250 S.W.2d 486; Rischeck v. Lowden, 347 Mo. 426, 147 S.W.2d 650; Scott v. Kurn, 343 Mo. 1210, 126 S.W.2d 185; Rowe v. Henwood, Mo.App., 207 S.W.2d 829; Spaunhorst v. United Rys. Co., 209 Mo.App. 319, 238 S.W. 821;

Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 172 S.W.2d 835; State ex rel. Hines v. Bland, Mo., 237 S.W. 1018; Stevens v. Thompson, Mo. App., 175 S.W.2d 166; Threlkeld v. Wabash Railroad Co., Mo., 269 S.W.2d 893.

& A. R. Co., 280 Mo. 483, 219 S.W. 68, 70 [10]. The ordinances of Wellsville, § 239, also provided that railroad companies should "use the highest degree of care to avoid collisions with vehicles of every kind or character" at public crossings.

The fact that the train was running late may be taken into consideration in determining whether the plaintiff was guilty of contributory negligence as a matter of law. Wolf v. New York, C. & St. L. R. Co., 347 Mo. 622, 148 S.W.2d 1032, 1034 [3]; Wright v. St. Louis-San Francisco Ry. Co., 327 Mo. 557, 37 S.W.2d 591, 593 [1]. How much the train was late is not definitely shown; it was estimated to be eight to ten minutes, or about an hour late.

From the photographs the crossing structure seems to be quite narrow, apparently built to accommodate a single lane of vehicular traffic. This circumstance may be taken into consideration because the driver was under a duty to observe where he was driving as well as to keep a lookout for trains. Nicholas v. Chicago, B. & Q. R. Co., 239 Mo.App. 421, 188 S.W.2d 511, 514 [6].

The evidence did not show what part of defendant's train struck plaintiff's automobile. If plaintiff did stop three or four feet from the north rail, then it would appear that he was not struck by the ordinary overhang of the engine or passenger cars, which was shown to extend from eighteen inches to two feet beyond the rail. Whether some unusual projection struck plaintiff's car may be considered in determining whether he was contributorily negligent.

The factors noted, among others, may be taken into consideration. This case, however, is chiefly distinguishable from those cited by the defendant because there is no conclusive proof of the point on Fifth Street from which the plaintiff had an unobstructed view of the railroad track westward after he passed the weed patch.

Under the facts and circumstances in evidence in this case, the determination of whether the plaintiff was guilty of contributory negligence was for the jury and not the court. There was no error in refusing defendant's motion for a directed verdict.

Accordingly, the judgment is affirmed.

All concur.