BENJAMIN R. BERRY, by His Next Friend, LAURA
A. BERRY, v. MAJESTIC MILLING COMPANY,
Appellant.

Division One, June 10, 1924.

1. **FORMER ADJUDICATION**: Reversal on Merits: New Action.
   Plaintiff's petition in his first suit contained two counts. In, the
   first he stated that he was a minor under sixteen years of age
   and his employment by defendant in its mill was unlawful under
   the Child Labor Act of 1911 and was negligence which caused his in-
   jury. In the second count he charged that he was inexperienced
   and the work he was required to do was dangerous, and defendant
   was negligent in requiring him to perform such work without warn-
   ing him of his danger. Before verdict, he dismissed as to the
   second count, and on appeal the judgment for him on the first
   count was reversed outright, on the ground that said act was un-
   constitutional and void. He made no request for a modification of
   the unqualified reversal, but subsequently brought this action based
   on the acts of negligence set forth in said second count. The ques-
   tion whether said judgment of reversal was *res adjudicata* on the
   merits and a bar to this action is discussed in the opinion, but a
   majority do not concur in the conclusion reached.

2. **NEGLIGENCE**: Employee: Work Outside Scope of Employment:
   Minor. An employee cannot recover damages for personal injuries
   unless at the time he was performing duties pertaining to his em-
   ployment, except upon circumstances authorizing a stranger to re-
   cover. If, without the knowledge and in disobedience to the direc-
   tion of his employer, he unnecessarily places his hand in a box for
   the purpose of ascertaining whether the rolls therein are properly
   grinding the corn into meal, and his hand is caught by the rolls
   and his fingers ground off, he cannot recover for his injuries unless
   a part of his duties was to test the meal to see that it was being
   properly ground. And the rule applies although the employee is a
   minor.

Headnote 1: Judgments, 34 C. J. sec. 1228. Headnote 2: Master and
Servant, 26 Cyc. 1088.

Transferred from Springfield Court of Appeals.

REVERSED.

*Allen & Allen* and *John L. McNatt* for appellant.

(1)   The matters involved in this case properly belonged to the subject-matter of the first action brought by this plaintiff.   Clark v. Railroad, 242 Mo. 595; Bircher v. Boemler, 204 Mo. 562; Jordan v. Railroad, 202 Mo. 425; McGuire v. Transit Co., 103 Mo. App. 472.   (2)   If the allegations in the plaintiff's petition properly belonged to the subject-matter of his first action and were not included, then they are barred by the plea of *res adjudicata* the same as if they had been included in his former litigation.   Spratt v. Early, 199 Mo. 500; Donnell v. Wright, 147 Mo. 639.   (3)   A judgment of reversal is a final judgment.   Strottman v. Railroad Co., 228 Mo. 154; Fisnegan v. Railroad Co., 244 Mo. 663; Ginnocchio v. Railroad Co., 264 Mo. 520; Abbott v. Railroad Co., 264 Mo. 616.

*I. V. McPherson* and *J. A. Potter* for respondent.

The opinion of the Court of Appeals should be reversed.   (1)   The opinion in holding that the decision of the Supreme Court in Berry v. Majestic Milling Co., 223 S. W. 738, was a judgment on the merits and a bar to this suit, is in direct conflict with the following controlling decisions of the Supreme Court:   Ellington v. Crockett, 13 Mo. 72; Clemens v. Murphy, 40 Mo. 122; Wright v. Salisbury, 46 Mo. 26; Wells v. Moore, 49 Mo. 230; Spradling v. Conway, 51 Mo. 51; Short v. Taylor, 137 Mo. 517; Baldwin v. Davidson, 139 Mo. 126; Couch v. Harp, 201 Mo. 164; Womack v. St. Joseph, 201 Mo. 467; Strottman v. Railroad, 228 Mo. 154; Johnson v. Railway, 243 Mo. 294; Ginnocchio v. Railroad, 264 Mo. 520.   (2)   The opinion, in holding that the former decision of the Supreme Court is a bar to the present suit, is in direct conflict with and a violation of Section 1329, Revised Statutes 1919.   (3)   The opinion, in holding that the former decision of the Supreme Court is a violation of the provisions of Sections 10 and 30 of Article

2 of the Constitution of Missouri, in that this opinion denies justice to the respondent and denies him a hear-ing of his case on the merits and deprives him of his life and property rights without due process of law. (4) The Court of Appeals overlooks the real ruling of the Supreme Court in the case of Berry v. Majestic Milling Company, and misconstrues and misinterprets the language and meaning of said opinion, in that the Court of Appeals construes said opinion to be one on the merits of the case, that is, a decision upon all the law and facts, whereas, the opinion decides only and solely a question of law and does not pass upon the merits. Berry v. Majestic Milling Co., 223 S. W. 738.

SMALL, C.—Personal injury case. Plaintiff, a boy fifteen years of age, on November 23, 1916, was employed by defendant in its cornmeal mill at Aurora, Lawrence County, Missouri, and the fingers of his right hand were caught between the rollers in said mill and injured to such an extent that amputation was necessary. At the May term, 1917, he filed suit against defendant to recover damages for said injury and as grounds therefor alleged: First, that plaintiff's employment by defendant, he being under sixteen years of age, was a crime prohibited and made unlawful by the laws of Missouri and was negligence on defendant's part, which caused his injury, and for which he prayed judgment in the sum of $10,000. "For another and further cause of action" the petition stated that plaintiff was employed to run one of defendant's corn mills, and that such work required skill and mature judgment, and was dangerous when performed by one without skill and mature judgment; that plaintiff at all times was unskilled and inexperienced, was but fifteen years of age and on account of his youth and inexperience was ignorant of the dangers of such work as he was employed and required to do, which defendant knew or might have known by the exercise of due care; that under such circumstances it was defendant's duty to warn plaintiff of the dangers of such work and to instruct him as to the proper manner of performing same, so as to enable him to avoid injury,

but defendant negligently failed to warn or instruct plaintiff and required and permitted plaintiff at all times to operate such machinery without such warning or instruction, whereby in the course of his employment on November 23, 1916, plaintiff's right hand was caught between the rolls of such machinery and his fingers so injured as to require amputation, by which he was damaged in the sum of $10,000, for which he prayed judgment.

The answer was a general denial and contributory negligence as to both counts of the petition, and a further plea to the first count that an act of the Legislature approved April 7, 1911, making it unlawful to employ children under the age of sixteen years in such employment as plaintiff was employed in by defendant, was unconstitutional, for the reason that it violated Section 28 of Article 4 of the Constitution of Missouri, in that said act contained more than one subject and that the purposes thereof were not clearly expressed in the title.

After all the evidence was heard plaintiff voluntarily dismissed the second count in his petition, and under the evidence and instructions the jury found a verdict for plaintiff for $5000, on the first count, from which defendant appealed to this court. The cause was heard here by Division Two, and in its opinion we held said act of the Legislature void, because its subject-matter was not clearly expressed in its title, and reversed the case outright without remanding it. [284 Mo. 182.] Thereupon, plaintiff brought this suit against defendant and for the same injuries, on December 9, 1920, and in his petition set up the same facts contained in the second count in his petition in the prior suit and prayed for the same judgment.

To the petition in this case, defendant for answer, besides a general denial and contributory negligence, pleaded the reversal of the former judgment without remanding the cause by this court as *res adjudicata*. At the trial the record in the former cause, including the entry showing its dismissal as to the second count of the petition and our opinion and mandate, was put in evidence by the plaintiff. Both sides also introduced testimony as to the merits of the case.

Plaintiff's evidence: Plaintiff testified he was born in 1901, and in 1916 was employed by defendant; that he received a message to go down to defendant's mill, which he did, and saw Mr. Jester, the foreman. Jester asked how old he was and he told him fourteen years. Jester then told him, "Well, I will take you down and you can help Lonnie (Jester's son) make meal." They then went down where Lonnie was in the corn mill, and Jester told him to help Lonnie make meal and showed him how to take the sacks off the spout and off the scales. He started at $10 per week, and was raised to $12 before the week was up. He worked three weeks. Lonnie and he were the only ones who worked in the corn mill. In the corn mill were two sets of rollers on one floor, the middle floor. They use steam power to run the corn mill. He was in the eighth grade at school, and had not done much of anything before that. Had never been in this mill before. Had no experience with mill machinery. Mr. Jester came in the corn mill two or three times a day. He had no certain time. He came in when he had a chance—sometimes not more than once a day and some days not at all. He would stay just a minute. He swept and "we" oiled the machinery and started it and threw sacks off and unchoked the spouts when they choked. Once Jester asked them to paint the roof, and "we" helped load flour into the cars on the track. "We" did whatever they needed us to do when short of hands. Unloaded coal, worked in elevator once or twice, sacked and weighed chops. Jester saw him examining the meal. He had often seen Lonnie examine the meal. Jester never said anything when he saw him oiling the machinery, examining the meal or unchoking the machinery. Never gave him any instructions or directions about the work. "Never forbid to do anything, only once. Lonnie was 'monkeying' with the setscrew that set the rolls, Jester came in and said us boys had better not do that and said he would set it. These screws are on the sides of the rolls." He did not know just how they worked. He never undertook to set these screws. When he was injured a spout had just choked up

and they got it unchoked, and turned the corn into the first rolls and started to let it run again. He then went around to the roll and put his hand in to get a handful of meal and was feeling of it. "Lonnie hollered and said to take off a few sacks and catch up, if we did not it would choke up again" and "I threw my hand back when he hollered and started to him and caught my fingers.

"Q. How did you get to this place where you caught the meal? A. There was a little door in the top of the lid. It is three or four inches wide and the length of the roll. . . . When Lonnie called me I had my hand on the edge of the box and looked at it and I just threw my hand back like that and turned it down and started to him and felt my fingers catch. I did not move my body when it caught. I turned by head when he called. I could not see him. He was out of sight. I was examining this meal to see if it was fine or coarse. . . . I turned the corn in before I examined the meal. The corn was feeding into the mill again. While I was fooling around just a minute or two I went where the roll was. After my fingers were caught Lonnie shut the power off, Jester and another man came." They took the belt off, backed up the rolls and took his hand out. Afterwards the doctor took four fingers off. He suffered considerable pain and still feels pain in those fingers. Does not sleep well. Still suffers pain in his hand. Hand is still tender. Jester sometimes helped in unchoking. Jester set the rolls—saw him once or twice. "When you opened the door to the corn mill you could not see anything for the meal." He never opened the door and looked in there when it was not running.

Cross-examination: He was fifteen just before he was injured. Last time he was measured he was five feet eleven inches tall. Weighed 162 pounds about a month ago. Does not know what he weighed when hurt. Lonnie and Jester told him what to do when he first went to work. They showed him how to take off these sacks and put them on the truck and take them to the warehouse some eighty-feet away. That was all that was ever told him about making meal. One time he said to clean the oil off the pul-

leys. That was when the mill was stopped. He (Jester) never told him to do anything else. "That is all he ever told me to do or asked me to do." He weighed 148 pounds when he first went there to get this job from Mr. Jester. It was in the afternoon about four o'clock when he got his hand in the roll. "I went around to rest a little and to see this roll and if the meal was being ground fine enough." If the meal was not fine or coarse enough, he never set the rolls. The rolls were enclosed in a wooden box and you cannot see them. Did not know how far the rolls were below the meal that he caught hold of. There were pulleys in the side of the box that turned the rolls. "I saw these rolls going in the pulley box and revolving around in there, did not know how they worked. I knew that the meal was falling down there and knew it (the rolls) had something to do with grinding it finer. . . . I knew that whatever was in there ground this meal." He knew the rolls were in there that ground up this cornmeal. That is true. He had testified before that he knew if he had thought about it that if anything got in there close enough it would grind that too. That is correct. He examined the meal where it came out above the rolls to see if it was too fine or too coarse, but he did not know how to adjust the rolls. He had seen Jester do that. Jester never told him to feel the meal to see if it was too coarse or too fine and never asked his opinion and he never reported to Jester as to whether it was too coarse or too fine. He never examined it many times. Did not know that he knew when he examined it whether it was too coarse or too fine. *He knew it would grind his fingers if they got caught in there. He was sure it would.* Neither Jester nor Lonnie ever told him to keep away from the rolls; if they had done so he would have stayed away from the rolls. He never looked in the place where he put his hand when he was hurt before he was injured. He had put his hand there to examine the meal several times before. When Lonnie called him he was facing the roll and stuck his hand in there like "this" and threw down the meal like "that"—did not know just exactly how he did it.

Plaintiff's physician testified that when plaintiff was injured he weighed about 150 pounds and was a big, well developed boy for his age. Other witnesses for plaintiff corroborated plaintiff's testimony in several particulars.

Defendant's evidence: On behalf of defendant the foreman, Jester, testified that after seeing Mr. Reynolds, he told plaintiff he would employ him and to come along to the corn mill and he would show him what to do; that they went there and he showed plaintiff how to take the sacks off the scales and put them on the truck; that when the meal got caught not to let it waste on the floor, but to clean it up and put it with the chops; all he told him was to keep the place clean; that he, Jester, was at the corn mill as often as he could get there; that he had a great deal to do; that he was seventy or eighty feet from the corn mill, and he would go backwards and forwards; that he, Jester, set the machinery to grind the meal; that he never told plaintiff to do anything around the rolls; that one day he caught plaintiff and witness's son Lonnie, who was sixteen years old, at the rolls, and plaintiff had the stay nut lost off the roll; that if this was lost the set-screw would turn either way; that he told plaintiff to go away from the rolls and leave them alone and told him that he, Jester, did all the adjustment and wanted them left that way; that he never saw plaintiff have the lid of the rolls open and never knew of his putting his hand in there; that he had plaintiff cleaning the machinery when it was stopped; sometimes plaintiff would help when the meal or corn spouts would get choked. Cross-examination: He, Jester, had enough to do there. He weighed wheat, tested it, made out tickets for it for farmers and superintended the loading and unloading of the cars. He waited on the local trade. It was enough for him to do. When he was busy at the elevator nobody but plaintiff and his own son was at the corn mill. What-ever was done there he knew these boys had done it. Some days he would be at the corn mill all day and other days two or three times a day; he had all these duties to do while plaintiff was working there, some days he

might have been in the corn mill only two or three times; the corn mill chokes up at various places and times; it takes two persons to start it; the boys might have put a stick in the spout; the only thing he showed plaintiff to do was to take the meal off these spouts and to run the packer; he told him to help Lonnie make meal and to clean up. On one occasion he found the boys had turned the set-screw and told them not to do it any more; the screws (to adjust the rolls) were set of a morning and they generally run all day; the reason for adjustment was the difference in the corn; that is all he told plaintiff to do that morning; there are additional things once in a while ''that you tell fellows to do;'' he knew plaintiff would have to help relieve choke-ups; and that he helped unload coal; he knew plaintiff and his boy did all at the corn mill that was done except what he himself did; he had known plaintiff since he was six years old and knew he was inexperienced with machinery. Witness had not been in the employ of the defendant company for two years before giving his testimony.

''Lonnie'' Jester testified that he never heard his father tell him and plaintiff to do anything around the rolls; that he never saw plaintiff around the rolls but once, and that was when he was oiling them, and he then told plaintiff not to ''monkey'' with these rolls; that it was his father's duty to set the rolls; that his father was there about once an hour; he never saw plaintiff doing anything his father told him not to do; that if a spout choked up he and plaintiff would unchoke it. Cross-examination: Witness had been working in the corn mill about a year—since he was fifteen; he and plaintiff had charge of the corn mill; his father was there—he was foreman of the corn mill; his duties at the elevator did not keep him away all the time; witness oiled sometimes when his father was not there; they oiled twice a day. It would often choke up—sometimes it would not choke at all during the day and sometimes once or twice a day. He was then asked about statements he made to other persons as to the accident

and plaintiff's duties, which he denied he made. In re-
buttal plaintiff introduced these witnesses who testified
to the statements made to them, but this testimony only
went to the credibility of the witness Lonnie Jester and
it is not necessary to set it out.

At the close of the evidence for plaintiff and at the
close of the case the court overruled demurrers to the
evidence asked by defendant. There was a verdict for
plaintiff, from which defendant appealed to the Spring-
field Court of Appeals, which reversed the judgment be-
cause said court was of opinion that our judgment of
reversal without remanding the case was *res adjudicata*
and was a bar to plaintiff's action as claimed by defend-
ant. On motion for rehearing, Judge BRADLEY receded
from his concurrence in the court's opinion and certified
the case to this court. The opinion of the Court of Ap-
peals and the dissenting opinion are found in 240 S.
W. 829 et seq.

I. As to *res adjudicata*: After the dismissal of the
second count of the petition in the prior suit, said pe-
tition did not state facts sufficient to constitute a cause
of action, because the first count merely
stated that defendant was negligent for
no other reason than that it employed plaintiff in its
mill when he was less than sixteen years of age. This
charge or specification was not sufficient in law to con-
stitute actionable negligence. An objection to the peti-
tion to the first count that it failed to state a cause of
action would have been good, because the act of the
Legislature relied on by plaintiff to support it was un-
constitutional and void. From a legal view the situa-
tion was the same as if no such law had ever been passed
and nothing had been said about the law in the petition.
The decision in the former case holding said act un-
constitutional necessarily held, in effect, that the first
count simply failed to state facts sufficient to consti-
tute a cause of action. Indeed, the court said, 284 Mo.
189: "Before any evidence was introduced the defend-

*Res Adjudicata.*

ant objected to the introduction of any evidence because 'the petition fails to state a cause of action in the first count,' which raised the constitutional question.'' But the second count of the former petition, which is the same as the petition in this case, alleges different and additional facts to those contained in the first count of the former petition and are sufficient to constitute a cause of action. The statute, the construction of which is involved on this appeal, is. as follows:

"Sec. 1329 (R. S. 1919). If any action shall have been commenced within the times respectively prescribed in articles 8 and 9 of this chapter, and the plaintiff therein suffer a nonsuit, or, after a verdict for him, the judgment be arrested, or, after a judgment for him, the same be reversed on appeal or error, such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed.''

This statute has been the subject of much considera-- tion by this court. There have been suggestions by this and the courts of appeals that a reversal of a judgment for plaintiff without remanding the cause was under this statute but the equivalent of a nonsuit. [Donnell v. Wright, 199 Mo. l. c. 313, citing Lumber Co. v. Lumber Co., 72 Mo. App. 248.]

But in the Donnell Case, LAMM, J., said: ''In leaving this view of the matter it should be said (to guard against misunderstanding) that the question is not here, and, therefore, we do not decide, that an opinion of this court holding plaintiff has no case at all on the facts and the law, which opinion is followed by a judgment of reversal only, leaves the identical issue on the identical facts open to re-agitation in a new suit—it being meet to dispose of that question only when reached as a live matter in a live case, and not *obiter* or by-the-by.''

But the question was a live matter before this court in Strottman v. Railroad, 228 Mo. 154, where there was a most elaborate consideration and review of the authorities, GRAVES, J., delivering the opinion of the Court in

Banc. In that case the plaintiff's husband, an engineer, was, as alleged by her in her first suit, killed by the negligence of a telegraph operator in failing to deliver a train dispatcher's message. Plaintiff claimed that at common law her husband and the telegraph operator were not fellow-servants, but if they were such at common law they were not fellow-servants under the Act of 1897 and a cause of action survived to her for the death of her husband under that act. She obtained judgment below which, on appeal, was reversed by this court without being remanded (211 Mo. 227). Afterwards another suit was instituted against the railroad by her, containing two counts, both of which were substantially the same as the petition in the first cause, except that one of the counts in the second suit charged wanton negligence on the part of the telegraph operator and prayed for punitive as well as statutory damages. We held the judgment of reversal in the first suit was *res adjudicata* and barred the second. We said, 228 Mo. 186 et seq.:

"By statute, we are authorized to enter judgments of simple reversal, and these judgments may or may not be finalities. If the merits of the cases are adjudicated and passed upon they are final, but if not, they are not necessarily so. So that considering the whole statute we are of opinion that a reasonable construction thereof precludes the plaintiff from again suing after a judgment of reversal in a case wherein the merits of the controversy have been investigated and adjudicated by the court, and this fact is one of easy determination. In the case at bar, it is not claimed that the plaintiff is relying upon any new facts, but is relying upon the same facts adjudicated in the former case. But if she had new facts, she has lost her opportunity. She might have asked for a modification of the judgment, as such has been permitted in some instances. Thus in Rutledge v. Railroad, 123 Mo. l. c. 140, this court thus spoke in an opinion on a motion to modify a judgment of reversal: 'On motion to modify the judgment, it has been suggested that plaintiff may have a cause of action upon further proof

that the signal on which the engineer acted, originated with the yardmaster. Plaintiff hence prays that the judgment be modified so as to remand the cause; and thus give him an opportunity to amend, and present that phase of the case to the trial court, the Statute of Limitations having intervened as against any new action he might bring. On consideration of this motion we are of opinion that it should be granted. [Bowen v. Railroad, 118 Mo. 541; Lilly v. Tobbein, 103 Mo. 477.] Accordingly the final judgment of this court will be that the judgment of the circuit court be reversed and the cause remanded.' It would appear that both plaintiff and the court in that case understood that the judgment of reversal was a finality, and unless modified no further action could be taken by plaintiff. Other cases of like tenor might be cited.''

In the case now before us the plaintiff asserts new facts, but under the above ruling in the Strottman Case the plaintiff lost his opportunity to assert the same in a new suit, because he asked for no modification of the unqualified judgment of reversal in his first case. But it may be said that the above ruling was *obiter* because the facts presented in the second suit in the Strottman Case were not new facts, but were the same as alleged in the first. But in the subsequent case of Ginnocchio v. Railroad Co., 264 Mo. l. c. 521-22, where the same subject was again considered, the court, after inserting in its opinion the above quotation from the Strottman Case, said:

''To break the force of the above excerpt plaintiff's learned counsel says that the facts of the case under review considered, the above quotation is *obiter* pure and simple. Be that as may be, we think it states the law correctly. At least it states that as law which bench and bar with practical unanimity have considered to be the law in this State for almost a hundred years. The same question was again before this court in the case of Abbott v. Railroad, 232 Mo. 616, and we there refused to reconsider the views held in the Strottman Case. We

are thoroughly convinced that the rule announced is a salutary one. There are maxims extant which substantially remind us that no men ought to be twice vexed with the same action, and that it is obligatory that finally an end be made to a lawsuit. The rule so ably and vehemently urged upon us by learned counsel would violate both the spirit and the letter of these maxims and make of an action at law a case of 'linked sweetness long-drawn out;' it would enable litigants to break their law-suits into convenient sections and administer them to the courts in broken doses, if we may borrow an expression from the nomenclature of another learned profession.''

We think this is sound law. While the first count in the first petition in this case failed to state a cause of action there was a trial on the merits and it was reversed by this court because it had no merits in that it was not actionable negligence to employ plaintiff in a cornmeal mill simply because he was less than sixteen years of age, as claimed in said first count. The case was not reversed on account of any matter of abatement or defect of parties or mere technicality, but on the merits as disclosed by the pleadings and relevant evidence under the pleadings then before the court. We hold that when there is an absolute reversal by this court of a judgment for plaintiff in a negligence case on the merits of the case as then presented to the court and the cause is not remanded for further hearing the plaintiff cannot afterwards bring another suit setting up additional and different charges of negligence for the same injury. To do so would be to enable plaintiffs in such cases to violate the well-settled law as to the scope of the binding effect of judgments, which is that when the court has jurisdiction over the parties and the subject-matter, its judgment is *res adjudicata* not only as to matters in issue, but as to all matters which the parties could have alleged to sustain their action or defense, for the reason that a party cannot split up his cause of action nor vex his adversary piecemeal for the same cause more

304 Mo. Sup.—20.

than once. [Melvin v. Hoffman, 290 Mo. 464, 235 S. W. l. c. 114; Donnell v. Wright, 147 Mo. 639, 49 S. W. 874, and cases cited; St. Louis v. United Railways, 263 Mo. l. c. 424, 174 S. W. 78, and cases cited; Spratt v. Early, 199 Mo. 491, 97 S. W. 925; Leslie v. Carter, 268 Mo. l. c. 428, 187 S. W. 1196.]

We hold, therefore, that our judgment of reversal in the former case was *res adjudicata* and barred the plaintiff's action in this case.

II. But we think plaintiff must fail on the merits of his case as now presented. It is well settled that an employee cannot recover against his master for personal injury unless at the time he was performing duties for his master pertaining to his employment ex-

**Negligence.** cept under the same circumstances as a stranger or third person could recover from his master. [Stagg v. Western Tea Co., 169 Mo. l. c. 498; Schaub v. Railroad Co., 106 Mo. 74.] This rule applies although the employee is a minor. [O'Brien v. Western Steel Co., 100 Mo. 182.]

The burden was therefore upon plaintiff to show that feeling of the cornmeal to test whether it was being ground properly by the rolls was a part of his duty to defendant under his employment. It is true that in general terms he was hired to help "Lonnie" make meal, but his particular duties were pointed out to him and he was not told to test the meal to see whether it was being properly ground by the rolls. Indeed, plaintiff testifies he did not know whether he could tell whether it was being properly ground by feeling of it as he was doing when injured, and that he never reported to the foreman at any time whether it was or he thought it was being properly ground or not. He expressly says that it was the foreman's duty to set the rolls, and that when the foreman saw "Lonnie" "monkeying" with the set-screw that set the rolls "he said us boys had better not do that and said he would set it." Plaintiff also says on the occasion just before he was injured he had been unchok-

ing the spouts and had turned the corn in again and that
"while I was fooling around just a minute or two I went
where the roll was;" "I went around to rest a little to see
this roll and if the meal was being ground fine enough."

Obviously the purpose of any employee feeling of
the meal to test whether it was being .properly ground
was to ascertain whether the rolls were working prop-
erly or whether they needed adjustment and to make
such adjustment if necessary, which plaintiff says that
the foreman told him not to do, but that he, the fore-
man, would do that. We think this was a sufficient com-
mand to plaintiff to inform him that he was to have
nothing to do with testing whether the meal was being
ground properly—which he himself says he could not
tell—but that was part of the foreman's duty in order to
ascertain whether the rolls needed adjustment. It also
appears from plaintiff's evidence that he was not feeling
of the meal for any purpose of the defendant in the
course of his employment, but was only "fooling around,"
as he says, when he attempted to do so. His evidence
shows that his feeling of the meal on the occasion of his
injury was a wholly useless and vain act so far as ac-
complishing any purpose of the master was concerned.
We hold that when injured plaintiff was not doing an
act for his employer, or within the scope of his employ-
ment by defendant, but for a mere idle purpose of his
own. Therefore defendant's peremptory instructions to
find for the defendant should have been given.

III. We also think plaintiff was guilty of contrib-
utory negligence. It is true he was inexperienced and was
fifteen years of age when he went to work, but he was a
large boy for his age and well developed mentally and
physically and had worked in the mill for
Contributory    three weeks before his injury. He put his
Negligence.     hands in the box where the rolls were, to
feel of the meal for some purpose of his own not within
the scope of his employment, when he knew that the
rolls were in close proximity to the meal which he was

feeling, and that he could not see the rolls at the time on account of the falling meal. He says he knew that if he got his hands too close to the rolls they would be injured. The danger of coming in contact with the rolls was so obvious and apparent and glaring that no boy of his age with normal mental faculties needed to be notified that his hands or fingers would be cut off if they got between the rolls.

We therefore hold that it was contributory negligence on the part of the plaintiff to put his hands in this box to uselessly feel of the meal while he was simply "fooling around" the rolls, as he says in his testimony he was doing at the time he was injured. In this case the dangerous machinery was securely and safely guarded by defendant as required by the statute in such cases, but notwithstanding the plaintiff raised the lid of the box which guarded the dangerous machinery and put his hand inside unnecessarily to feel of the cornmeal for some idle purpose of his own and was injured by such machinery. In so doing plaintiff was guilty of contributory negligence as a matter of law in our judgment, and for that reason also the court should have given the peremptory instructions asked by the defendant.

The judgment of the Court of Appeals was right, and that of the circuit court was wrong. Plaintiff's case was barred by our former judgment of reversal, and besides he failed to make out a case on the merits. The judgment of the circuit court is therefore simply reversed, without the case being remanded. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. *Woodson* and *Graves, JJ.,* concur; *Ragland, J.,* concurs in paragraph 2 and the result; *James T. Blair, P. J.,* concurs in the result.