EDWARD HEIN, Respondent, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant, No. 41351—224 S. W. (2d) 963.

Division Two, November 14, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, December 12, 1949.

*Warner Fuller, William A. Thie* and *Arnot L. Sheppard* for appellant.

*Everett Hullverson* and *Forrest Boecker* for respondent.

BARRETT, C.—Edward Hein, a truck driver for the Lueking Transfer Company, had made a delivery to the Cotton Belt freight house and was crossing the Terminal's tracks, laid in Main or First Street, at a crossing between O'Fallon and Dickson Streets when his truck was struck by a Chicago and Eastern Illinois Railway passenger train. Initially his action for damages for his resulting injuries was against both the Chicago and Eastern Illinois and the Terminal. Upon the first trial of his cause a jury found for him and against the Terminal but exonerated the Chicago and Eastern Illinois. He did not appeal from the judgment in favor of the Chicago and Eastern Illinois and upon the Terminal's appeal from the $4,000.00 judgment against it the cause was reversed and remanded. Hein v.

Chicago & E. I. R. Co., (Mo. App.) 209 S. W. (2) 578. Upon this the second trial of his cause he recovered a judgment of $10,000.00 against the Terminal. The Terminal's first contention upon this appeal is that the unappealed judgment of the trial court in the first trial exonerating the Chicago and Eastern Illinois and the judgment of the St. Louis Court of Appeals reversing and remanding the judgment against it are conclusive (res judicata) of the plaintiff's right to recover in this action.

It is not necessary to analyze and develop, point by point, the Terminal's detailed argument that the judgments in the first trial and appeal are conclusive against recovery upon this trial. It is sufficient, for the purposes of this opinion, to say that the Terminal seeks to apply to this case the general rules of res judicata. Restatement, Judgments, pp. 157-160. Its contention may be summarized by this excerpted quotation from its argument: "Judgment on the first trial of this case went for C. & E. I., and for plaintiff against defendant. He did not appeal from that judgment. His failure to appeal left the judgment in favor of C. & E. I. final that it was not guilty of any actionable negligence. This ipso facto frees defendant from any legal responsibility for plaintiff's injuries. Defendant can not be derivatively liable for the acts of C. & E. I. which legally failed to act. * * * Inasmuch as defendant's alleged liability is necessarily based by plaintiff exclusively upon the postulate that C. & E. I. was guilty of actionable negligence, and inasmuch as it has been finally determined that the C. & E. I. was not guilty of any actionable negligence, the conclusion is inescapable that no liability can be cast upon defendant, regardless of any lessor-lessee relationship. Any liability upon defendant must be derivative, because plaintiff was injured by a C. & E. I., not a Terminal train. Regardless of the relationship between the two defendants, if one's liability is primary and the other's is derivative, there can be no derivative liability in the absence of primary liability."

The answer to the Terminal's contention is twofold. In the first place its liability upon this trial was not derivative or dependent upon its relationship with the Chicago and Eastern Illinois or upon any negligent acts, conduct or breach of duty on the part of the Chicago and Eastern Illinois, as was the case in Brown v. Wabash Ry. Co., (Mo. App.) 281 S. W. 64; Portland Gold Mining Co. v. Stratton's Independence, 158 Fed. 63, and C. C. C. & I. Ry. Co. v. Schneider, 45 Ohio S. 678, 17 N. E. 321. The plaintiff was hit by a Chicago and Eastern Illinois train and the Chicago and Eastern Illinois, in the operation of its train over the Terminal's tracks, may or may not have been negligent. But the Terminal's liability was not predicated upon any negligence in the operation of the train but upon the theory that the crossing, owned and maintained by the Terminal, was so peculiarly hazardous and dangerous that there was a duty upon the

952

Terminal to provide some safety measure or means of warning for those using its crossing, and that liability is not dependent or derivative. Annotations: 60 A. L. R. 1096; 16 A. L. R. 1273; 71 A. L. R. 1160; 50 C. J. S., Sec. 760c, p. 286. In the first trial the Chicago and Eastern Illinois' liability was hypothesized upon a finding of negligence under the humanitarian doctrine and the Terminal's liability was submitted upon *the failure of its flagman at the O'Fallon Street crossing* to warn the plaintiff of the approach of trains *as he used another crossing,* the crossing between O'Fallon and Dickson Streets. Upon the appeal from that trial the court of appeals held that the plaintiff did not make a submissible case against the Terminal, because there was no duty upon the O'Fallon Street flagman to warn the plaintiff. Specifically the court of appeals held: ''The conclusion is inescapable that plaintiff was not entitled to recover upon his theory of the case, that is, that it was the duty of the watchman at O'Fallon Street to warn him of the approaching train, and that the watchman was guilty of negligence in failing to have given him such warning.'' Hein v. Chicago & E. I. R. Co., 209 S. W. (2), l. c. 583. Nevertheless, in the second place, the court of appeals, as this court has often done in the interest of justice (Maxie v. Gulf, M. & O. R. Co., 356 Mo. 633, 202 S. W. (2) 904) exercised its discretion and instead of reversing the judgment outright remanded the cause ''in order to afford plaintiff the opportunity, if he should be so advised, to amend his petition and try his case upon the theory that the private crossing had been so much and continuously used by the general public as to have charged the Terminal with the duty of looking out for the safety of persons going upon it.'' In this situation the judgment of the court of appeals, even though it did not affect the Chicago and Eastern Illinois, was not res judicata as between the plaintiff and the Terminal. State ex rel. Massman Const. Co. v. Buzard, 346 Mo. 1162, 145 S. W. (2) 355; 50 C. J. S., Sec. 625, p. 50. The situation was not as if the court of appeals had reversed the judgment outright. Ginnocchio ▇▇▇ v. Illinois Cent. R. Co., 264 Mo. 516, 175 S. W. 196; Berry v. Majestic Milling Co., 304 Mo. 292, 263 S. W. 406.

▇▇ The Terminal contends, furthermore, that the plaintiff failed to make a submissible case because (a) there is no evidence that the crossing was extra-hazardous and therefore there was no duty on the defendant to furnish a watchman or other warning device at the crossing and (b) the plaintiff was guilty of contributory negligence as a matter of law. In effect the Terminal's argument concedes that if there was evidence that the crossing was extraordinarily dangerous that there was a duty to furnish some means of warning. The Terminal's three tracks, a main line track and two switch tracks, are laid in First or Main Street with paving on both sides of the tracks. In general the tracks run north and south intersecting O'Fallon and Dickson Streets. They are in a commercial area, surrounded by

freight houses, warehouses and storage plants. The crossing between O'Fallon and Dickson Streets was not such a crossing as O'Fallon Street was and we need not say whether it was a public or a private crossing but it was a crossing and had been constructed and maintained by the Terminal since before 1919. Usually trucks proceeded down Main Street to O'Fallon to cross the tracks but when there was a freight car "spotted" at the Bowman Egg Company, as there was on this day and usually, the trucks used the crossing in question. The evidence is not as detailed as it could have been as to the number of trains using the tracks and their speed but one of the tracks is a main line track into the Union Station. The Terminal says that the plaintiff's evidence as to the number of trucks using the crossing is so contradictory and speculative that it cannot be considered substantial. His witnesses estimated that fifty trucks a day used the crossing, that an average of five trucks every ten minutes used the crossing during the day and that two or three hundred trucks a day used the crossing. But the defendant's own witnesses, including the O'Fallon Street watchman and a patrolman, testified that from ten to twenty, or twenty-five trucks a day used the crossing. Cars "spotted" at the Bowman Egg Company obstructed the view of the tracks towards O'Fallon Street. Considering the physical surroundings, the nature of the neighborhood, the amount of travel over the crossing and the obstructions to view, without detailing all the evidence further, it was for the jury to say, under all the circumstances, whether the crossing was peculiarly dangerous and whether the Terminal had exercised the appropriate degree of care with respect to safety or warning. Homan v. Missouri Pac. R. Co., 334 Mo. 61, 64 S. W. (2) 617; Thomas v. Chicago, R. I. & P. Ry. Co., (Mo. App.) 271 S. W. 862; annotations 60 A. L. R., l. c. 1106-1118; 16 A. L. R. 1273, 1277; 71 A. L. R. 1160, 1166. The rule was first recognized in Welsch v. Hannibal & St. J. R. Co., 72 Mo. 451 but it is not an essential element or part of the substantive rule that the plaintiff in addition to showing that the crossing is extraordinarily or peculiarly hazardous "must show also that other railroads in similar circumstances provided watchmen."

It is not necessary to again detail the circumstances under which the plaintiff attempted to use the crossing and demonstrate that he was not guilty of contributory negligence as a matter of law. The facts and circumstances are set forth in the opinion of the court of appeals (209 S. W. (2), l. c. 584) and, as that court held, the plaintiff's contributory negligence, under the circumstances, was for the jury. Wright v. St. L.-S. F. Ry. Co., 327 Mo. 557, 564, 37 S. W. (2) 591; Rucker v. Alton R. Co., 343 Mo. 929, 123 S. W. (2) 24. Here the plaintiff stopped before he proceeded over the crossing, looked as far and as carefully as he could, and sounded his horn to attract the attention of the flagman at O'Fallon Street before he

drove out from behind the "spotted" boxcar and in this respect his case is distinguishable from Rischeck v. Lowden, 347 Mo. 426, 147 S. W. (2) 650 and Scott v. Kurn, 343 Mo. 1210, 126 S. W. (2) 185.

It was of necessity, in the circumstances of this case, the theory of the plaintiff's action that the crossing was peculiarly hazardous and that therefore it was the ▮▮▮ duty of the Terminal to provide some safety device or means of warning. And, as we have indicated, it was a question for the jury whether the Terminal had exercised the required degree of care or breached its duty in this regard. Annotation 60 A. L. R., l. c. 1106. Nevertheless, the plaintiff submitted the Terminal's liability in this manner: His principal instruction, one, began by defining "negligence." It then said, in a separate paragraph, "You are further instructed that it was the duty of the defendant Terminal Railroad Association of St. Louis, at all times, to use ordinary care to give warning of the approach of trains along its tracks at all public street crossings and at all other places where members of the public customarily crossed its tracks and where defendant knew or, in the exercise of ordinary care, could have known that persons customarily crossed the tracks." The instruction then told the jury that if they found the following facts to be true a verdict should be returned for the plaintiff, that the Terminal owned and maintained the tracks, that the crossing had been in existence for many years and that large numbers of the general public used it daily, that the Terminal knew of the use and knew or should have known that plaintiff was using it, unaware of the approach of a train, and "that defendant wholly failed to warn plaintiff of the approach of the said train and to provide any means to warn plaintiff of the train's approach and that the defendant was thereby negligent" and that such negligence proximately caused plaintiff's injuries. This was the only instruction, except on the measure of damages, given on behalf of the plaintiff. At the request of the defendant the court gave this instruction: "You are instructed that before you can find that defendant Terminal was guilty of negligence in failing to station a watchman at the crossing here involved, you must believe from the greater weight of the believable evidence that this crossing was a much-traveled one and was a particularly dangerous one. Unless you so find your verdict must be for defendant Terminal."

It may be that the instruction, particularly the quoted paragraph, in general and abstractly correctly states the law and defines the defendant's duty. But it does not apply to the theory upon which the plaintiff was compelled to rely or to the precise facts and circumstances of this case. Generally, in the absence of statute, a railroad is under no duty to provide a watchman or other warning at a crossing. Toeneboehn v. St. L.-S. F. Ry. Co., 317 Mo. 1096, 1110, 298 S. W. 795, 801; annotations 60 A. L. R. 1096; 16 A. L. R. 1273. This is not to say that any particular words or formula must be used but the

test of liability, the essence of the plaintiff's case, is that the crossing was peculiarly hazardous and therefore there was a duty upon the railroad to furnish some type of safety device. Suggested proper instructions upon this theory are to be found in Homan v. Missouri Pac. R. Co., 334 Mo. 61, 74, 64 S. W. (2) 617, 622 and Benton v. Thompson, 236 Mo. App. 1000, 156 S. W. (2) 739. The plaintiff says that the defendant's instruction is incorrect and therefore it may not be said that they conflict. But even so the plaintiff's instruction does not correctly hypothesize the defendant's duty in the circumstances of this case. The plaintiff undertook to instruct the jury upon the whole case and in so doing omitted to instruct or improperly instructed upon an essential element of his case. McGrew v. Thompson, 353 Mo. 856, 184 S. W. (2) 994, 998; Blackwell v. Union Pacific R. Co., 331 Mo. 34, 52 S. W. (2) 814. If the defendant's quoted instruction was properly given the instructions conflict, and without it the instructions improperly hypothesize the defendant's duty and liability under the theory upon which the plaintiff must of necessity rely. Wright v. St. L.-S. F. Ry. Co., 327 Mo. 557, 37 S. W. (2) 591.

It was error to give instruction one and accordingly the judgment is reversed and the cause remanded. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.