Judith O'LEARY, a Minor, by Margaret O'Leary (Plaintiff), Respondent,

v.

ILLINOIS TERMINAL RAILROAD COMPANY, a Corporation (Defendant), Appellant.

No. 29325.

St. Louis Court of Appeals.

Missouri.

March 20, 1956.

Ely & Ely, Robert C. Ely, Alphonso H. Voorhees, St. Louis, for appellant.

Glennon T. Moran, St. Louis, George J. Moran, Granite City, Ill., of counsel, for respondent.

NICK T. CAVE, Special Judge.

This is an appeal from a judgment for $7,000 in favor of the plaintiff and against the defendant.

The amended petition alleged that plaintiff was a minor of the age of fifteen years; that on November 29, 1952, she was a passenger in an automobile which was being driven westwardly on Lincoln Avenue in Granite City, Illinois; that the defendant owned and operated an electric railway train through that city; that the tracks upon which said train operates extend in a north and south direction and intersect Lincoln Avenue at right angles within said city; that the defendant, on said date, so negligently operated its train that it collided with the automobile in which she was riding, causing it to overturn and injure her seriously. Since there is no contention made on this appeal that plaintiff's petition did not state a cause of action and that her evidence did not make a submissible issue of negligence, we need not detail the specific negligence alleged.

The answer admitted the formal allegations of the petition, but denied it was neg-

ligent, and alleged that plaintiff's injuries resulted from her own contributory negligence in certain respects.

The defendant first contends that the court erred in overruling its motion for a directed verdict and its motion for judgment notwithstanding the verdict because the evidence shows that plaintiff was not in the exercise of due care for her own safety and was guilty of contributory negligence as a matter of law. This contention is made on the theory that plaintiff failed to look when she knew that the car in which she was riding was approaching a railroad crossing, and that if she had looked, she could have seen the train approaching; and also her failure to listen, because if she had listened, she would have heard the train's whistle in time to have warned the driver of the automobile and avoided the collision.

■ In deciding the question of contributory negligence as a matter of law, we must apply the law of Illinois on that subject since the cause of action arose in that state. Bryan v. Sweeney, 363 Mo. 1024, 256 S.W.2d 769; and Rhyne v. Thompson, Mo.Sup., 284 S.W.2d 553. In railroad crossing cases, the general rule on contributory negligence, as a matter of law, in Illinois was announced by the supreme court in Humbert v. Lowden, 385 Ill. 437, 53 N.E.2d 418, 420, as follows: " 'It is not a rule of law that the omission of the duty to look and listen will bar a recovery where there are facts excusing the performance of that duty.' * * * it is a question for the jury to determine whether, in view of all the surroundings, the injured party was guilty of negligence, in failing to look and listen, or whether he is relieved, by the circumstances, from the duty to look and listen. * * * it is the settled rule of this court that it cannot be said, as a matter of law, that a person is in fault in failing to look and listen, if misled without his fault, or where the surroundings may excuse such failure. * * * It is a question for the jury to say whether the failure to stop and look

is, or is not, negligence." This case cites many prior decisions on the subject.

■ In reviewing the evidence relative to contributory negligence, the rule in Illinois is substantially the same as the rule in this state which is to the effect that it is the appellate court's duty to view the evidence in the light most favorable to plaintiff and to accord to plaintiff the benefit of all favorable inferences reasonably arising from all the evidence. Defendant's evidence will be disregarded unless it aids plaintiff. Sprague v. Goodrich, 376 Ill. 80, 87, 32 N.E.2d 897; and Rhyne v. Thompson, supra. With these general principles in mind, we review the evidence.

The collision occurred in Granite City, Illinois, a city of about 29,000 population. Lincoln Avenue extends east and west in the city and is intersected by the defendant's tracks which extend north and south. The automobile in which plaintiff was riding was being driven westward on Lincoln Avenue, and defendant's train was being operated southward. The collision occurred between 9 and 9:30 in the evening. The automobile was overturned and plaintiff was injured. She was 15 years of age at the time of the accident and lived in Collinsville, Illinois, but had never been to Granite City and had no prior knowledge of the intersection of Lincoln Avenue and defendant's tracks. The night was dark and cloudy and there was a mist or fog in the air. It had snowed that morning but was not snowing at time of accident. The automobile was being driven by Emmet Cross, and Zella Ford (nee Holman) was riding in the front seat with him. In the rear seat there were four young people, and plaintiff was sitting second from the right side of the rear seat. These young people were on the way from Collinsville to "Teen Town" in Granite City. Lincoln Avenue was a heavily travelled street, but there were no crossing gates, flash signals or watchmen at the crossing. There was a one-story building on the northeast corner of the crossing, which sat about 18 feet from Lincoln Avenue and about the

same distance from the railroad tracks, and was 60 or 65 feet in length. There was a concrete plant on the southwest corner and a coal yard on the southeast corner of the crossing, into each of which a spur track goes for the delivery of materials. The Granite City Steel Mills was located one block southwest of the crossing. There was a street light at the crossing and also cross-arms indicating an intersection with railroad tracks.

The train was a two-car electric passenger train and was about 180 feet long; the headlight was lit and would show about 1,000 feet; the lights were lit on the inside of the cars, with the usual number of windows on each side. Plaintiff testified that Cross was driving the automobile about 15–20 miles per hour prior to the accident and that she had not observed anything wrong about his driving; that she was looking straight ahead and talking with the other people in the car; that she did not know there was a railroad crossing at that point, but as they approached the intersection, Cross said that "the crossing was rough", and he put on his brakes and slowed down to about 8–10 miles per hour, "the next thing I knew then I was in a daze and I was getting out of the car". It isn't clear from the record whether plaintiff understood from Cross's remark, "the crossing is rough", that he was referring to a railroad crossing or a street crossing. She did testify that she did not know that it was a railroad crossing until after the accident.

Virginia Howard and Zella Ford (nee Holman), who were passengers in the automobile, also testified for plaintiff and their testimony is essentially the same as hers. The three young men who were in the automobile were in the military service at the time of the trial and did not testify.

George Knetz was called by the plaintiff and testified that he was a ticket and freight agent for the defendant and was riding on the train the night of the accident; that he was seated about 15 feet behind the motorman next to a window on the east side of the car; that he saw the headlights of the car in which plaintiff was riding "not quite a block" from the point of collision; that he had the car in view for "about 4 seconds" before it passed behind the building at the northeast corner of the intersection. He estimated the speed of the car at 40–50 miles per hour and the speed of the train at 10 to 15 miles per hour; and that the whistle was being sounded.

There is evidence to the effect that when an automobile going west on Lincoln Avenue reaches a point about a block east of the crossing a person in the car can, by looking to the rear of the building on the northeast corner, see an approaching train when it is about a block north of the intersection. This is the open space to which witness Knetz referred when he said he observed the lights of the automobile for about 4 seconds. All the evidence is that after an automobile passes that open space, a train cannot be seen approaching from the north until the automobile and the train are within a few feet of the crossing.

Plaintiff also called as a witness defendant's motorman, who testified relative to his position in the front end of the train; of his familiarity with this crossing; and stated that from a point about one block north of the crossing he could see about one block east on Lincoln Avenue, but that as the train approaches the building on the northeast corner, his view to the east becomes less and from the time he reaches the northeast corner of the building he could not see more than 16 feet east of the tracks; that on the night of the accident he was looking in both directions and straight ahead as he approached the crossing; that he saw no automobile on Lincoln Avenue from the time he was one block north until he got to the crossing, at which time he saw a flash of headlights from his left and the automobile passed in front of the train; that the right front corner of the train struck the right rear of the automobile; and that he applied the brakes about the time of the collision.

Without rehashing the above facts, we are of the opinion that the evidence presents "a question for the jury to determine whether, *in view of all the surroundings,* the (plaintiff) was guilty of negligence, in failing to look and listen, * * *"; Humbert v. Lowden, supra; and that the court did not err in overruling defendant's motion for a directed verdict and its motion for judgment notwithstanding the verdict.

In support of its contention that the plaintiff was guilty of contributory negligence as a matter of law, the defendant cites the following cases: Elliott v. Elgin, J. & E. Ry. Co., 325 Ill.App. 161, 59 N.E.2d 486; Dee v. City of Peru, 343 Ill. 36, 174 N.E. 901; Redick v. M. B. Thomas Auto Sales, Inc., 364 Mo. 1174, 273 S.W.2d 228; Austin v. Public Service Co. of Northern Illinois, 299 Ill. 112, 132 N.E. 458, 17 A.L.R. 795; and Walldren Express & Van Co. v. Krug, 291 Ill. 472, 126 N.E. 97. We have examined those cases and do not consider them controlling because of factual differences. It would serve no useful purpose to lengthen this opinion by detailing the evidence in each of such cases. The question of contributory negligence as a matter of law must be decided on the facts of each particular case. The mere failure to look and listen under any and all circumstances is not contributory negligence as a matter of law.

Defendant's second contention is that the court erred in overruling defendant's objection to certain evidence concerning noise and smoke incident to industrial plants, traffic and visibility at and adjacent to the crossing in question because such conditions were not confined to the time and place of the accident. In disposing of this contention, it must be kept in mind that the petition alleged that this particular crossing was extraordinarily hazardous by reason of, among other conditions, its location in an industrial area, the location of certain buildings and manufacturing plants, noises and smoke emitting from industrial plants which affected the visibility of a person approaching said crossing; and

that the defendant had negligently failed to protect said crossing by gates, watchmen, lights, bells or any protective device to warn of the approach of a train toward said crossing. Plaintiff's verdict directing Instruction No. 1 submitted to the jury the question of whether this was an extraordinarily or unusually hazardous crossing, and the defendant does not contend on appeal that the evidence was insufficient to submit such an issue. Its claim of error is that such evidence should have been limited to the conditions existing on the night of the accident. Plaintiff argues that such evidence was competent as tending to show that the crossing was hazardous and that such conditions had existed for a sufficient length of time that the defendant would be charged with knowledge of such hazardous conditions in time to have provided some safety device to protect the travelling public.

Witness Persful testified that he had lived within 200 feet of the crossing for the past five years; that there was a large coal yard located immediately on the southeast corner of the crossing and that defendant frequently shipped carloads of coal into that plant; that on the southwest corner of the intersection there was located a construction company, "concrete mixing outfit", that covered about one block; that the Granite City Steel Mills had a very large plant located one block from the crossing and that it used blast furnaces in connection with its work; that there are other manufacturing plants in the general neighborhood of the intersection. After the witness described the general industrial area and the various plants located at or near the crossing, he was then asked whether there were noises incident to the operation of such plants and whether smoke was emitted by such plants when in operation that caused a haze or smoke in that area. To each of such questions the defendant objected unless it was confined to a description of the conditions at the time of the accident. Witness Persful testified that he was not at home the evening of the accident and did not know the condition of visibility on that particu-

lar night. He merely described the general and usual conditions which had existed during the five year period he had lived within 200 feet of the' crossing. He testified that the steel mills operated 24 hours a day; that the concrete mixing plant frequently operated until eleven o'clock at night; and that smoke was "always" emitting from "those plants".

Witness McClain was permitted to testify, over defendant's objections, to substantially the same surrounding conditions.

■ We think this evidence of the conditions which had generally existed for a considerable time prior to the accident was admissible as tending to prove that the crossing was hazardous and that such condition had existed for a sufficient length of time to impute notice thereof to the defendant. This seems to be the holding in Hein v. Terminal R. Ass'n, 359 Mo. 946, 224 S.W.2d 963, 966. It is true the court did not detail the evidence, but at page 966 of 224 S.W.2d it said: "Considering the physical surroundings, the nature of the neighborhood, the amount of travel over the crossing and the obstructions to view, without detailing all the evidence further, it was for the jury to say, under all the circumstances, whether the crossing was peculiarly dangerous and whether the Terminal had exercised the appropriate degree of care with respect to safety or warning".

■ This evidence, being competent on the issue of whether the crossing was dangerous and hazardous, the court properly overruled the objections. However, defendant argues that there is no substantial evidence that there was smoke shrouding the crossing on the night of the accident and that the jury could have been confused and misled by such evidence. If the defendant desired to limit the applicability of such evidence, it should have offered an instruction for that purpose. The rule is well established by many decisions in this state that where evidence is admissible for one purpose or one issue, but would be improper for other purposes and upon other issues in the case, it should be received and the opponent then has a right to an instruction if so requested, limiting the extent to which and the purpose for which the jury may consider such evidence. State ex rel. Kansas City Public Service Co. v. Shain, 345 Mo. 543, 134 S.W.2d 58; Ferril v. Kansas City Life Ins. Co., 345 Mo. 777, 137 S. W.2d 577; Brule v. Mayflower Apartments Co., Mo.App., 113 S.W.2d 1058; and Hammond v. Schuermann Bldg. & Realty Co., 352 Mo. 418, 177 S.W.2d 618.

The court did not err in admitting the above evidence.

■ Defendant's next contention is that plaintiff's Instruction No. 1 is erroneous in certain particulars. This was a verdict directing instruction and required the jury to find that the defendant was negligent in failing to provide additional warnings for motorists because, among other conditions, "the view of motorists, travelling westwardly along Lincoln Avenue, was obscured, * * *." This refers to the building located on the northeast corner of the intersection above mentioned. All the evidence is to the effect that the building obstructed the view of the train approaching from the north. However, the defendant argues that there was evidence that this building had been recently moved to that location but that there was no evidence that it had been there a sufficient length of time to charge the defendant with knowledge of such obstruction. In referring to this building, witness Persful stated (page 97): "It's been there about 3 years, I guess.". He was testifying on December 13, 1954, plaintiff was injured on November 29, 1952, so if the building had been there approximately 3 years prior to the date he was testifying, then it is reasonable to infer that it had been there several months prior to the date of the accident. There is nothing in the record as a whole that indicates the defendant was contending that it had no knowledge of the location of the building in time to have remedied the hazardous condition. Furthermore, the location of the building was only one of the conditions existing which contributed to making this crossing a dangerous one; at least, making it an issue to be

submitted to the jury, and the other conditions had existed for approximately 5 years. We do not believe the instruction was erroneous for the assigned reason. Defendant cites Hicks v. Chicago, M. St. P. & P. R. Co., Mo.App., 233 S.W.2d 787, and Winslow v. Missouri, K. & T. R. Co., Mo. App., 192 S.W. 121. Those cases are distinguishable on the facts and the issues presented.

Defendant also contends that this instruction is erroneous because it permits the jury to take into consideration evidence of "all the conditions and physical surroundings and circumstances shown by the evidence" in determining whether the crossing was hazardous; and that the quoted clause would permit the jury to consider the testimony of witnesses Persful and Mc-Clain, and that such testimony was improperly admitted, consequently the instruction was erroneous. We have ruled that the testimony of those two witnesses was not improper insofar as the issue of whether the crossing was hazardous. The instruction is not erroneous for the assigned reason.

It is also contended that this instruction is erroneous because it permits the jury to find that the crossing was an extra-hazardous crossing without properly defining an extra-hazardous crossing. Substantially this same instruction was approved in Homan v. Missouri Pac. R..Co., 334 Mo. 61, 64 S.W.2d 617, and Hein v. Terminal R. Ass'n of St. Louis, supra. These cases discuss at some length the question raised by the defendant, and we need not lengthen this opinion by restating the reasons therein assigned. Defendant cites Cash v. New York Cent. R. Co., 294 Ill.App. 389, 13 N.E.2d 1012, as support for its contention. The facts in that case are entirely different in that the court was discussing a situation where an automobile ran into a train which was temporarily stopped at a crossing and which could be seen by the driver of an automobile for approximately 200 feet.

Instruction No. 1 was not erroneous for the assigned reasons.

Defendant next contends that plaintiff's Instruction No. 2 is erroneous. This instruction submits failure to keep a lookout as a basis of negligence. Defendant argues that plaintiff's evidence presents two divergent sets of facts, in one of which it is shown there was no failure to keep a lookout, and from the other of which it could be inferred that there was such a failure, and that the instruction fails to hypothesize the facts which are essential and upon which she relies to support a verdict. This argument is based on the contention that the motorman, who was produced as a witness by the plaintiff, testified that he saw the automobile the first time it became visible to him and immediately applied the brakes. However, that is defendant's construction of the testimony of the motorman. He stated that he never saw the automobile, that the only thing he saw was "the flash of the headlights in the middle of the street. * * * the middle of the crossing—a little better". At that time he said the front end of the train was in the middle of the intersection, "or maybe a fraction over on the south of it". However, witness Knetz testified that he was riding on the train and seated about 15 feet behind the motorman; that he saw the lights of the automobile reflecting on the street for almost a block before the collision, and before his view was obstructed by the building located on the northeast corner of the intersection. This evidence justifies the inference that if the motorman had looked to his left before reaching such building he could have also seen the automobile approaching. Defendant concedes that if plaintiff's testimony is to be believed, that the speed of the automobile as it approached the intersection ranged between 10 and 20 miles per hour, then the motorman would have had a view of the automobile before he reached the building and that it could be said that he was not keeping a vigilant lookout, but it is argued that witness Knetz testified that the automobile was travelling at 40–50 miles per hour, and that if such evidence is believed, then the automobile was not in view at the time the motorman passed the opening to the rear of the building on the northeast corner. That

is merely defendant's construction of such testimony. We do not believe the evidence presents two or more divergent sets of essential facts, under one or more of which plaintiff would be entitled to recover and under one or more of which she would not. Under such circumstances, it was not necessary for the instruction to hypothesize the facts in greater detail. Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496.

Defendant's next assignment is that the court erred in giving plaintiff's Instruction No. 10, which is a burden of proof instruction on the issue of contributory negligence. The instruction clearly places the burden of proof of this issue on the defendant.

■ This cause of action arose in Illinois and under the law of that state it was encumbent upon plaintiff to allege and prove that she was in the exercise of ordinary care for her own safety at the time of the accident. Hanson v. Trust Co. of Chicago, 380 Ill. 194, 43 N.E.2d 931, 933; Prater v. Buell, 336 Ill.App. 533, 84 N.E.2d 676, 678; Newell v. Cleveland, C., C. & St. L. R. Co., 261 Ill. 505, 104 N.E. 223, 224. However, the suit was brought in Missouri, where the law places the burden of proof of contributory negligence on a defendant. This situation presents the question whether the Illinois requirement that plaintiff allege and prove that she was in the exercise of due care was a substantive and essential element of her right to recover, or was merely a procedural matter to be determined by the law of Missouri.

■ For many years, our courts held that the question of the submission of the defense of contributory negligence was a matter of procedure, regardless of where the cause of action arose, and that the law of Missouri would govern. Sanders v. Illinois Central R. Co., 364 Mo. 1010, en banc, 270 S.W.2d 731, 735; Menard v. Goltra, 328 Mo. 368, 40 S.W.2d 1053. The decision in the Sanders case was by the court en banc and followed the holding in prior decisions. However, shortly after the opinion in the Sanders case was handed down, Division No. 1 of the Supreme Court, in Redick v. M. B. Thomas Auto Sales Inc., 364 Mo. 1174, 273 S.W.2d 228, held directly to the contrary and specifically overruled all prior decisions on the subject, except the Sanders opinion, which was not mentioned or referred to.

■ This presents a difficult and delicate question for the court of appeals, since a court of appeals must follow the last controlling decision of the supreme court on a given subject. The rule is that a divisional opinion of the supreme court cannot overrule an opinion by the court en banc unless the point discussed in the en banc opinion was mere obiter dictum. State ex rel. Nevins v. Hughes, 347 Mo. 968, 149 S.W.2d 836, 840(2); State ex rel. United Rys. Co. v. Reynolds, 278 Mo. 554, 213 S.W. 782. We are unwilling to say that the holding, on this issue, in the Sanders case was dictum and, in effect, was overruled by the divisional opinion in the Redick case. Consequently, the decision in the Sanders case is controlling and must be followed by this court. If so, it was not error for Instruction No. 10 to place the burden of proof of contributory negligence on defendant.

Finding no reversible error, the judgment is affirmed.

■ However, because of the irreconcilable conflict in the opinions of the Sanders and Redick cases, supra, we consider the question of such general interest and importance that the law on the subject should be re-examined. It is therefore ordered that the cause be transferred to the supreme court. Sec. 10, Art. V, Constitution, V.A.M.S.

ANDERSON, P. J., and GEORGE P. ADAMS, Special Judge, concur.